## VANDERLINDEN v. LORENTZEN et al.
### No. 160.

Circuit Court of Appeals, Second Circuit.

Jan. 12, 1944.

Edgar R. Kraetzer, and Haight, Griffin, Deming & Gardner, all of New York City (J. Ward O'Neill, of New York City, of counsel), for Lorentzen.

Patrick J. McCann, of Brooklyn, N. Y., and E. C. Sherwood, of New York City, for Turner & Blanchard, Inc.

Abraham M. Fisch, of New York City, for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal by both defendants from a judgment for the plaintiff for personal injuries suffered by the breaking of a ship's ladder (Jacob's ladder) leading over the side of the ship to the deck of a lighter alongside. The jury found both defendants liable, but awarded indemnity in favor of one of them, the stevedore, against the other, the shipowner. In substance, the appeal is therefore only by the shipowner, because, although the stevedore also appeals from the judgment, it needs no more for its protection than to preserve that part of the judgment which awarded indemnity against the shipowner. The cause was tried to a jury which brought in a "verdict of $40,000 for the plaintiff against both defendants. We recommend indemnification for Turner & Blanchard" (the stevedore). The shipowner raises upon this appeal (1) the absence of evidence to support a finding of negligence against him; (2) that, even if he could properly be held negligent, the provision for indemnity was wrong; and (3) that in any event, the judge was wrong in allowing the jury to consider evidence of a custom for stevedores not to examine ladders furnished by the ship. The stevedore appeals on the ground that the evidence did not support a finding of negligence against it.

From the evidence the jury might have found the following facts. Vanderlinden, the plaintiff, was a "checker" in the employ of one, Jansen, whom the stevedore had employed to check the cargo which was to be discharged from a lighter of the Delaware, Lackawanna & Western Railroad and laden upon Lorentzen's ship, alongside of which the lighter had been made fast. Jansen billed the stevedore for the checking service, and the stevedore passed on the charge to Lorentzen. When Vanderlinden went to work on the lighter, he crossed the deck of the ship from the pier where she lay, and started down a Jacob's ladder which the stevedore's foreman, Ristuccia, and some fellow employees had just put over the ship's side to reach to the deck of the lighter. This ladder belonged to the ship, but the ropes were thoroughly rotten and altogether unfitted to bear a man's weight. As soon as Vanderlinden had gone down a step or two, it broke and he fell to the deck of the lighter, suffering extremely severe injuries. Ristuccia had asked Wathne, the ship's second officer, for a Jacob's ladder to put over the ship's rail, and was told that he would find one on the boat deck. Ristuccia said that Wathne spoke of only one ladder; Wathne, that he told Ristuccia that there were four. Wathne also testified that in fact there were four, three of which were sound, but the fourth unfit, and that this one had been rolled up and put aside under the water tank. Ristuccia said that he saw only one. If there were four, the ladder that he took was the rotten one, and concededly Wathne did not tell him to avoid any one of the four. While Ristuccia was fastening one end of the ladder to the ship's rail, and as he let it unroll over the side, he did not notice its condition; nor did he examine it after it was in place. His excuse was that there was a custom for stevedores to rely upon the ladders furnished by the ship, and not to examine them.

The judge charged the jury that it was the stevedore's duty to furnish the plaintiff with a "safe mode of access to work" and that "the measure" of it was the "foreseeability of danger, and what a reasonable man * * * would do." He also charged them that the shipowner was also liable unless,—assuming that there were four ladders—he had put the unfit one reasonably beyond access by Ristuccia. If there was only one, they might find the shipowner negligent without more. In specification of the stevedore's liability he said that if "an ordinary look at the coiled ladder * * * would have put a reasonable man on notice that the ladder was defective," that would charge the stevedore. But if the "defect would not be apparent on an ordinary looking at it," they were to "consider the evidence of custom * * * that stevedores always accept the ladder as they get it * * * and merely * * * drop it overside." Such an acceptance might not be reasonable; the custom was not final; in the end they must decide what degree of inspection was reasonable care. On this charge, as we have said, the jury found both defendants guilty of negligence, and the first question, before we come to the question of indemnity, is whether the verdict was right pro tanto.

We hold that both defendants were under a duty to use reasonable care to see that the plaintiff had a safe approach to the deck of the lighter: i. e., that the ladder was safe. Vanderlinden was a "business visitor" of both, because he went upon the lighter in the interest

of both, and neither could devolve its duty to him upon the other, however much they might agree upon its final incidence as between themselves, or whether the law would do so without agreement. We have just so decided as to the ship in Grillo v. Royal Norwegian Government, 2 Cir., 139 F.2d 237, to which we refer without further discussion. That the stevedore owed him a similar duty is beyond question; indeed as we understand it, it does not deny the duty, but insists that it discharged it, when it used the ship's ladder. For this it relies upon testimony that from casual inspection—"ordinary looking"—the defect did not appear, and that custom justified it in not making any further examination. The jury found it liable, and under the charge they must have done so, either because a casual inspection would have detected the defect, or because, if it would not, the supposed custom either did not exist, or would not protect the stevedore, if it did. In view of the grant of indemnity in the same verdict we must assume that they found that the custom did exist, but that as between the stevedore and the plaintiff it was no protection. In that they were clearly right; a custom exonerating the stevedore from all need of examining a ladder, down which its employees or "business visitors" must descend, would be so "unreasonable" as to be unlawful without more. The jury might disregard it altogether; indeed the judge could probably have done so himself. Prima facie therefore the defendants were joint tortfeasors, since each failed to inspect the ladder as his duty demanded. As such, under well-settled law, there could be no indemnity between them (Union Stock Yards Company of Omaha v. Chicago, B. & Q. R. R., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453, 2 Ann.Cas. 525), although now in New York contribution is allowed by statute. N. Y. Civil Practice Act, § 211-a.

There are however exceptions to this doctrine, even when the negligence of the tortfeasor entitled to indemnity is personal and not imputed, as an agent's negligence is to his principal, or as in situations like Washington Gas Light Company v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712. The tortfeasor may for instance contract for indemnity. John Wanamaker, New York, Inc. v. Otis Elevator Company, 228 N.Y. 192, 126 N.E. 718. The Restatement of Restitution, § 93, lays it down that, if the buyer of a chattel uses it in reliance upon the seller's care in furnishing goods proper for the intended use, the seller must indemnify him, provided that the reliance is "justifiable"; and while that may not much advance the solution, at least it serves to put the question. We may assume that the evidence at bar was enough to justify a verdict that stevedores in New York Harbor seek and receive from the ships on which they work, such Jacob's ladders as they need, and that they get them rolled up, as the ladder here in question was rolled up. On the other hand the evidence was not enough—indeed there was none whatever—that shipowners knew that the stevedores fastened one end of the ladder to the ship, let it unroll over the side, and used it without any examination whatever. If that was the custom of stevedores, it was a unilateral custom, which did not charge the shipowner; indeed, it was so wantonly reckless that only the plainest possible evidence should charge the shipowner with notice of it. He might rightly assume that the stevedore would make at least some inspection, and some inspection was indeed inevitable, for the stevedore could not use the ladder at all, without at least looking over the side to see whether it was long enough to reach the lighter, or so long as to double on the deck. That much scrutiny would alone at once have disclosed the unfitness of the ladder at bar, whose ropes had in places been frayed so much as to be hardly more than strings. The doctrine that there may not be indemnity between joint tortfeasors is certainly desirable in a case like this, where the stevedore's fault was so much the greater of the two. It would be shocking to hold that the stevedore's "reliance" on the ladder furnished was "justifiable", and so to throw the whole loss on much the less reprehensible of the two wrongdoers. The provision in the judgment for indemnity must be reversed.

Judgment in favor of the plaintiff against both defendants affirmed.

Judgment of indemnity in favor of the stevedore against the shipowner reversed and the cross-complaint dismissed.