## LOPEZ v. AMERICAN–HAWAIIAN STEAMSHIP CO.

No. 10852.

United States Court of Appeals Third Circuit.

Argued Jan. 9, 1953.

Decided Feb. 5, 1953.

Rehearing Denied March 10, 1953.

Herman Moskowitz, Philadelphia, Pa., for appellant.

T. E. Byrne, Jr., Philadelphia, Pa. (Springer H. Moore, Jr., Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Following a jury disagreement in this civil action by a stevedore carpenter for injuries sustained aboard a ship owned *pro hac vice* by appellee, the district judge granted the defense reserved motion for judgment and plaintiff appeals.

Lopez, the plaintiff, was employed by a stevedore contractor, Luckenbach Steamship Company, Inc. On May 3 and 4, 1948, the latter was loading the S.S. Willis Vickery under a written contract with her owner, the appellee. That agreement, which was in evidence, called upon Luckenbach to provide, among other services, "all necessary * * * hatch tenders * * *." Luckenbach was also responsible for "* * * removing and replacing beams and hatch covers." Throughout May 3rd the ship was at Pier No. 84, Philadelphia. Its No. 2 hold had four decks and a lower hold. Lopez worked all that day on C or D deck of No. 2 hold shoring cargo loaded by the Luckenbach stevedores. He testified that when he stopped at five o'clock in the afternoon he left his tools where he had been working. The following morning the ship was moved across the Delaware River to Camden where Lopez with a number of Luckenbach stevedores went aboard at about ten o'clock. He stated that his foreman, Claire, told him to work on No. 4 hold and to get his tools. To do this Lopez went through the No. 2 escape hatch. It is not too clear at which deck level he emerged but at any rate as he did there was some light from the escape hatch which enabled him to see for two or three feet ahead. He walked that distance and then lit a match which went out. About that instant, according to Lopez, "I slip off, went down and I went down to the hatch. That is all I know." As a result of the

fall he sustained injuries for which he brought this suit, alleging they were caused by the unseaworthiness of the vessel and by the negligence of its owner.

Absence of protective hatch covers at whatever deck from which Lopez fell is relied on as the unseaworthy condition. Appellant concedes, as he must, that the appellee's responsibility for that situation depends upon whether it was in control of No. 2 hold during the critical period. He asserts that the evidence establishes such control.

The record fails to support that statement. By the written contract the Luckenbach company undertook "* * * to faithfully furnish such stevedoring services as may be required upon such vessels [of appellee] as are assigned to the Contractor [Luckenbach Co.]." The testimony is that Luckenbach had been ordered by appellee to do the stevedoring work on the Vickery. Evidence was adduced that when the cargo loading started the Luckenbach stevedores removed the Vickery hatch covers and that when the stevedores stopped work around five o'clock on May 3rd "they left all the other decks open and just put the top pontoons [hatch covers] on, put a tarpaulin over that", as the foreman Claire said. This, according to him, left the remaining decks open down to the D deck level. He said those decks were not covered because the cargo loading in the hold had not been completed and that the stevedores were going back to work on that same deck the next day. There is some testimony that apparently another group of stevedores worked that night and until early in the morning of May 4th. Just what they did and in what part of the ship they were occupied is not shown, but there is nothing to contradict the inference from the complete service contract that they were Luckenbach men. There is also testimony by the ship's second officer that at various times someone from the ship's licensed personnel would observe stowage of cargo to "* * * make sure that it [was] being stowed properly, no pilferage, no smoking in the hatches * * *," and that during the night the mate on watch might go down into the No. 2 compartment to make sure there were no

fires. The second officer was on duty the evening of May 4th when the stevedores ceased work. At that time they covered the top deck hatch. The officer said that it was his duty to see that the hatch was completely covered. This was primarily to protect the hold from the elements. Asked about the practice on covering the tween deck hatches when further work remained to be taken care of in a hold, he said, "The tween decks are left open for the stevedores to come down to the same deck on the following shift, whether it is that day or the next day."

█ There is nothing in this record to indicate that appellee did not turn over to the Luckenbach people a seaworthy ship and, as to No. 2 hold, a safe place to work. Appellee's duty in that respect terminated at the time control was relinquished. Lynch v. United States, 2 Cir., 1947, 163 F. 2d 97; Osnovitz v. United States, D.C.E.D. Pa.1951, 103 F.Supp. 238.

With respect to negligence, it is charged that appellee failed in its duty to furnish Lopez with a safe place to work. The open hatch is the main fault suggested. To it is added absence of light. The uncontradicted evidence concerning light in the No. 2 hold is that it was turned off when the stevedores were not at work. The light switch was readily accessible in the mast table. Lopez, it will be recalled, went down the escape hatch seeking his tools before the stevedores began work, which meant not only that the lights had not yet been turned on, but that the deck hatch tarpaulin and cover had not been removed.

Had appellee been in control of the No. 2 hold at the time of the accident there was enough evidence of negligence to have made this branch of plaintiff's claim a jury question. Hawn v. Pope & Talbot, Inc., 3 Cir., 1952; 198 F.2d 800. The distinction between the facts in that decision and the present circumstances is that in Hawn there was no evidence that the ship owner had surrendered control of the ship or of the particular hold involved.

█ Appellant also urges that the district judge erred in his instruction on contributory negligence. This is true but is of no moment under the actualities of this case. The district court in allowing the defense motion for judgment expressly decided that there was no factual question for the jury to pass on. This completely eliminated contributory negligence as an issue.

The judgment of the district court will be affirmed.