ALASKA STEAMSHIP CO., INC. *v.* PETTERSON.

No. 287. Argued March 8–9, 1954.—Decided April 5, 1954.

*Robert V. Holland* argued the cause for petitioner. With him on the brief was *Stanley B. Long.*

*John Geisness* argued the cause for respondent. With him on the brief was *Samuel B. Bassett.*

PER CURIAM.

The judgment is affirmed. *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85, 100; *Pope & Talbot* v. *Hawn,* 346 U. S. 406.

MR. JUSTICE BURTON, with whom MR. JUSTICE FRANKFURTER and MR. JUSTICE JACKSON join, dissenting.

The *Sieracki*[1] and *Pope & Talbot*[2] cases cited as the basis for the Court's decision do not justify the result announced. They evidence this Court's latest and broadest statement of a shipowner's liability for the unseaworthiness of his ship and its equipment, but they do not reach the instant case. They assert the liability of a shipowner to stevedores and carpenters who, in consequence of the unseaworthiness of his ship or its equipment, are injured on board in navigable waters while engaged in work connected with loading or unloading the ship. Those cases establish that such liability for unseaworthiness exists although the injured maritime workers are not employees of the shipowner but

---

[1] *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85.

[2] *Pope & Talbot* v. *Hawn,* 346 U. S. 406.

are employees of a third party who is under contract to supply stevedoring services.

The question presented by the instant case goes further. It asks whether a shipowner is liable for injuries suffered on his ship by a stevedore, even when those injuries result from unseaworthiness of equipment that does not belong to the shipowner and is not part of the ship's equipment, but belongs to the stevedore's independent employer, is part of that employer's loading equipment, and is brought on board by such employer. There is no suggestion in the cited cases that the shipowner's responsibility extends beyond the seaworthiness of his ship and its equipment, and I see no adequate reason for judicially extending it beyond that limit.

As the instant case offers a new precedent, it is important to recite its facts so that its effect may be accurately measured and limited in the absence of a supporting opinion.

The Court of Appeals stated the question which it decided as follows:

"The question presented is whether a vessel's owner is liable for injuries received by an employee of a stevedoring company (an independent contractor) on board ship while engaged in the loading of the ship where the injuries are caused by a breaking block brought on board by the stevedoring company." *Petterson* v. *Alaska S. S. Co.*, 205 F. 2d 478.

Respondent Petterson was an able-bodied stevedore, 73 years old, employed as a longshore foreman by the Alaska Terminal and Stevedoring Company. That company was engaged by petitioner Alaska Steamship Company, Inc., to load the latter's vessel, the S. S. *Susitna*. In May 1950 respondent thus became engaged in loading that vessel while it was docked in what is assumed to be navigable water in the State of Washington. Petterson's employer, the stevedoring company, was authorized by

the shipowner to use, in the loading operation, the contractor's own gear or the gear of the ship, at the contractor's option. Respondent and his fellow employees rigged a snatch block which had been standing or lying unused upon the deck of the vessel. It was of a type often found as part of a ship's gear aboard such vessels and also as part of a stevedoring company's gear. The block was treated by each court below as having been brought on board by the stevedoring company and as belonging to that company.[3]

---

[3] The record shows that the trial court found "There was no proof as to the ownership of said block." The trial court also said that— "the snatch block in question, at the time of the accident, was not under the control or supervision of the respondent [shipowner] but was under the exclusive control and supervision of the libelant [Petterson], his employer and his employer's agents.

.        .        .        .        .

"The Libelant has failed to establish, through the evidence introduced, that the snatch block involved, which apparently caused the accident and injury to the Libelant, belonged to or was part of the ship gear of the Respondent [shipowner].

"Such finding was conceded, in effect, by Counsel for Libelant in his argument.

"Proceeding on that assumption, Counsel for Libelant argued that the logic or reasoning of the case of Seas Shipping Company, Inc., v. Sieracki, 328 U. S. 85, would impose the obligation of seaworthiness of the vessel upon Respondent [shipowner] as to gear—in this case a snatch block—not belonging to Respondent but being used by the stevedore in loading the ship.

"The Court can not agree that the Supreme Court ruling in that case would justify such a conclusion."

The Court of Appeals said:

"It is not clear whether the block belonged to the ship or the Stevedoring Co., it being the type of equipment commonly found as part of the gear of both ships and stevedoring firms. For the purposes of this appeal, it will be assumed that it was brought on board by Stevedoring Co. . . .

"The court below granted a decree for the Owner on the ground that it was not shown that the block belonged to or was a part of the gear of the Susitna. Petterson's argument that liability should be

While being put to a proper use in a proper manner, the block broke, thus causing some of the loading gear to fall and crush respondent's leg as he was engaged in supervising the work of longshoremen aboard the ship.

Petterson filed a libel *in personam* in the United States District Court for the Western District of Washington against the shipowner claiming $35,000 damages resulting from the unseaworthiness of the block. After trial, the libel was dismissed without a reported opinion. The Court of Appeals for the Ninth Circuit reversed the decree and remanded the cause for determination of damages. 205 F. 2d 478. Because of an alleged conflict with *Lopez* v. *American-Hawaiian S. S. Co.,* 201 F. 2d 418, and the importance of the decision in relation to a shipowner's liability for unseaworthiness, we granted certiorari. 346 U. S. 914.

The doctrine of seaworthiness was stated as a settled proposition in *The Osceola,* 189 U. S. 158, 175, as follows:

"That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship."

That doctrine was a natural outgrowth of the dependence of a ship's crew upon the seaworthiness of the ship and its equipment. Services of a crew must be rendered with whatever equipment the shipowner supplies. Such seamen are not expected to supply maritime or loading equipment and it is only fair for the law to subject shipowners to an absolute liability to them for the unseaworthiness of the shipowner's ship or equipment.

---

imposed even if the gear belonged to the Stevedoring Co. was rejected by the court on the ground that Seas Shipping Co. v. Sieracki, 328 U. S. 85, 66 S. Ct. 872, 90 L. Ed. 1099, did not go so far." 205 F. 2d, at 479.

In the *Sieracki* case, this Court extended the shipowner's traditional obligation so as to bring within its protection stevedores while engaged in loading or unloading the ship. This was largely on the premise that the stevedores were then rendering services usually and formerly performed by the crew. The decision assumed that the stevedores, like their predecessors, used the ship's equipment. "For these purposes he [the stevedore] is, in short, a seaman because he is doing a seaman's work and incurring a seaman's hazards." 328 U. S., at 99.[4] The historical analogy disappears in the instant case. The modern stevedores, who supply substantial loading equipment, are a far cry from the traditional wards of the admiralty around whom the Court threw its protection in *The Osceola* case.[5]

---

[4] In discussing the stevedore's relation to his immediate employer, the independent stevedoring contractor, the Court assumed that in the usual case such a contractor likewise supplied no equipment. It said: "The latter [contractor] ordinarily has neither right nor opportunity to discover or remove the cause of the peril and it is doubtful, therefore, that he owes to his employees, with respect to these hazards, the employer's ordinary duty to furnish a safe place to work, unless perhaps in cases where the perils are obvious or his own action creates them." 328 U. S., at 95. The instant case is an example of the latter classification where the contractor supplied the defective block and it was taken on board by his employees. The implication is that, under such circumstances, the liability should rest on the contractor rather than upon the shipowner. The injury would then be covered by the stevedore's absolute right to compensation provided by Congress in the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U. S. C. § 901 *et seq.*

[5] For a statement of the contrast between the traditional wards of the admiralty and modern longshoremen, see dissent in *Pope & Talbot* v. *Hawn,* 346 U. S. 406, 423–426; *Isbrandtsen Co.* v. *Johnson,* 343 U. S. 779, 782–789; Norris, The Seaman as Ward of the Admiralty, 52 Mich L. Rev. 479. For a condensed review of the development of the law in this general field, see Howe, Rights of Maritime Workers, 5 NACCA L. J. 146, and 6 NACCA L. J. 131.

While the doctrine of absolute liability for unseaworthiness, expounded in *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96, is reasonable enough when applied to a shipowner in relation to his own ship and to its equipment, there is no comparable justification for applying it to equipment owned by others and brought on board by them. Thus to extend such absolute liability would make the shipowner responsible for the result of latent dangers he cannot prevent. The burden should be upon those best able to eliminate the hazard—in this case, the stevedoring contractor.[6]

Petitioner also has emphasized the fact that Petterson was injured while working in a part of the ship that was under the control of the stevedoring contractor rather than of the shipowner. This distinction, in favor of the shipowner, was relied upon in *Lopez* v. *American-Hawaiian S. S. Co., supra,* and has been considered decisive in other cases. However, if the unseaworthy equipment in the instant case had been a part of the ship's equipment, the principles underlying the *Sieracki* and *Pope & Talbot* decisions, *supra,* might justify the shipowner's liability, regardless of who was in control of the part of the ship where that equipment caused the injury.[7] It is precisely because the equipment in the instant case was not the ship's equipment that the general principles underlying those cases do not reach the issue before us.

Finally, the extension of a shipowner's absolute liability so as to include the unseaworthiness of equipment

---

[6] See *Rogers* v. *United States Lines,* 205 F. 2d 57, pending here on petition for certiorari; 2 Norris, The Law of Seamen (1952), 251–253; Robinson on Admiralty (1939) 303–307; Recent Cases, 102 U. of Pa. L. Rev. 402–404.

[7] See *Strika* v. *Netherlands Ministry of Traffic,* 185 F. 2d 555, allowing recovery from a shipowner for an injury suffered by a longshoreman while on shore, but caused by the ship's unseaworthy tackle.

owned and brought on board by a stevedoring contractor makes such a marked change in the traditional responsibility of a shipowner as to call for legislative authorization rather than mere judicial recognition. "The legislative process is peculiarly adapted to determine which of the many possible solutions to this problem would be most beneficial in the long run." *Halcyon Lines* v. *Haenn Ship Corp.*, 342 U. S. 282, 286. That statement was made when this Court declined to recognize judicially the doctrine of contribution between joint tort-feasors as a shipowner's remedy against a stevedoring contractor. The statement is equally appropriate here. In fact, Congress already has demonstrated its interest here through the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U. S. C. § 901 *et seq.* That Act insures compensation to stevedores in comparable cases without proof of negligence. It specifically excludes from its operation members of the ship's crew and persons employed by the master to load, unload or repair "any small vessel under eighteen tons net." [8] It was thus tailored, in 1927, to provide precisely the kind of relief that Congress preferred in lieu of that provided by this Court, in 1926, through *International Stevedoring Co.* v. *Haverty*, 272 U. S. 50.

For the foregoing reasons, the judgment should be reversed and the extension of liability which it introduced should be left to legislative initiative. In any event, the effect of it should be restricted to its facts.

---

[8] 44 Stat. 1426, 33 U. S. C. § 903.