Walter E. **HILL**, Plaintiff,

v.

The **PIONEER STEAMSHIP COM-
PANY**, Defendant.

No. 29772.

United States District Court
N. D. Ohio, E. D.

Sept. 13, 1954.

J. Harold Traverse, Victor M. Todia,
Edward F. McDermott, Cleveland, Ohio,
for plaintiff.

John H. Hanninen, McCreary, Hinslea & Ray, Cleveland, for defendant.

FREED, District Judge.

The plaintiff brought this action to recover for personal injuries sustained by him as a result of a fall in an unguarded opening in the hold of defendant's Steamer, John Stanton. At the time of the accident the vessel was moored at the dock of the Rud Machine Company, a general ship repair contractor and wholly owned subsidiary of the defendant. The work being performed aboard the Stanton during the Winter of 1951 and 1952 included renewal of tank tops, general cargohold repairs, repairing traverse bulkheads, boiler repairs and improvements in the firehold ventilation system.

The plaintiff was employed by Rud Machine Company as a shipfitter's helper. On the morning of the accident he and another helper, Hearns, went aboard the Stanton with their immediate superior, a shipfitter by the name of Sinclair. It is uncontradicted that Hill had never before been aboard the vessel. The three men had been ordered to install a ventilation fan in the firehold of the ship. They reached the firehold between 9:00 and 9:30 a. m. Finding the lighting inadequate for the close work to be performed, Sinclair sent the plaintiff and Hearns to the stockroom to procure electrical extension cords for use in the firehold. Upon their return, they tested the extension cords on two of the permanent outlets in the firehold which proved to be dead. Either at the suggestion of the shipkeeper who was in the firehold at the time or of their own volition, Hill and Hearns decided to look for a live outlet in the coal bunker.

The coal bunker on the Stanton is adjacent to the firehold on a deck level approximately 10 inches lower than that of the firehold. The bunker is separated from the firehold by a bulkhead in which there are openings known as coal ports.

During navigation the coal ports serve as spillways through which the coal stored in the bunker spills into the firehold and is thence passed to the boilers. When the ship is not in operation and the coal bunker is empty the ports act as passageways for crew members and repair personnel passing to and from the firehold and bunker. The coal bunker of the Stanton was empty during the time in question. A metal plate about 2 feet in length had been placed between the bunker and the firehold in such a manner as to serve as a ramp between the two levels.

In his search for a live outlet Hearns moved to the coal port and from a position straddling the entrance began to feel for an outlet on the wall of the bunker. While he was still in this position Hill, with the apparent intent of aiding in the search, passed behind him into the bunker, took two or three steps down the ramp and fell into a hole in the deck of the bunker about 8 inches from the base of the ramp.

As he fell he pitched forward striking his head on a metal bulkhead stiffener. As soon as Hill fell the Rud Machine job boss, Sinclair, the shipfitter, and the shipkeeper rushed to his aid, the former two reaching him first from their vantage point on the opposite side of the coal bunker where they had been discussing another job. Sinclair and the job boss pulled Hill from the hole.

Hill's complaint contains two separate and distinct causes of action, the first founded upon warranty of seaworthiness and the second predicated upon negligence. At the outset, because of the opposing contentions of the parties, it appeared that the Court would be required to resolve the irreconcilable conflict between the decisions of the Second and Third Circuits and the view taken in the Ninth Circuit regarding the delegability or nondelegability of the duty of furnishing a seaworthy vessel.[1]

---

1. Under the view prevailing in the Ninth Circuit control is not prerequisite to liability of the shipowner because the warranty of seaworthiness is regarded as imposing liability without fault. Petterson v. Alaska S.S. Co., 9 Cir., 1953, 205 F.2d 478. In the Second and Third Circuits actions founded upon unseaworthi-

However, upon final argument the plaintiff abandoned the claim of unseaworthiness and elected to proceed solely in negligence.

The plaintiff asserts that the defendant shipowner was negligent in failing to provide adequate illumination of the area in which he was required to work, in permitting a dangerous opening to exist in the deck of the vessel, in failing to guard or light such opening or to warn the plaintiff of the existence thereof and in failing generally to provide the plaintiff with a safe place of employment. The defendant denies these allegations and adds that Hill's injuries were the result of his sole negligence and that in any event his negligence directly contributed to, or caused his injuries.

■ It is indisputable that the shipowner is not liable in negligence unless it is established that it had control of the vessel at the time of the charged negligence. Lopez v. American-Hawaiian S.S. Co., 3 Cir., 1953, 201 F.2d 418; Guerrini v. United States, 2 Cir., 1948, 167 F.2d 352; Feinman v. A. H. Bull S. S. Co., D.C.E.D.Pa.1952, 107 F.Supp. 153; Osnovitz v. United States, D.C.E.D. Pa.1951, 103 F.Supp. 238; Muratore v. United States, D.C.S.D.N.Y., 1951, 100 F.Supp. 276. The defendant contends that the evidence established that it had completely relinquished control of the Stanton free of hazard in favor of the Rud Machine Company and that it may not, therefore, be held accountable for an accident resulting from a hazardous condition which came into existence after its release of control. The defendant seeks to distinguish the instant case from those in which control of the shipowner was found to exist on the ground that the ship aboard which the plaintiff received his injuries was decommissioned and laid up for the winter at the time

of the accident. The terminology used to describe the status of the vessel is immaterial to the decision on the question at hand and should not be permitted to obscure the issue. Whether or not defendant in this case retained general supervision and control of the vessel must be determined exclusively from all of the evidence and the inferences and conclusions to be drawn from the facts elicited at the trial.

■ Certain of the defendant's officers paid occasional visits to the vessel while the repairs were being made, but it is uncontradicted that these visits were for the sole purpose of inspecting the progress of the work. Such intermittent inspections in and of themselves do not establish general control of the vessel by the defendant. If such control is to be found, it must be primarily predicated upon the duties and activities of the shipkeeper, Frank Genry.

■ The evidence disclosed that it was the custom of the defendant to retain a shipkeeper for each of its vessels laid up for repairs. Shipkeepers were normally chosen from the ranks of the seamen employed by the defendant to sail its ships during the navigational season as was Frank Genry, the shipkeeper on the John Stanton. Genry, while he was shipkeeper for the Stanton, was also employed by Rud Machine Company as a "firewatch" from 7:30 a. m. when the Rud employees would come aboard the vessel until 4:00 p. m. when they would leave. It was his duty to turn on the lights for the Rud workmen at 7:15 a. m., the power for those lights coming exclusively from shore connections because the ship's generators were not in operation. In some instances Rud employees would come aboard before 7:15 a. m. and would turn the lights on. Genry as part of his duties regularly re-

ness are not so conclusively distinguished from those sounding in negligence with the result that a shipowner escapes liability for unseaworthiness if he surrenders his vessel in a seaworthy condition to a third party. Lopez v. American-Hawaiian S.S. Co., 3 Cir., 1953, 201 F.

2d 418; Lauro v. United States, 2 Cir., 1947, 162 F.2d 32; cf. Brabazon v. Belships Co., 3 Cir., 1953, 202 F.2d 904; Mollica v. Compania Sud-Americana De Vapores, 2 Cir., 1953, 202 F.2d 25, certiorari denied 1953, 345 U.S. 965, 73 S.Ct. 952, 97 L.Ed. 1384.

placed burned out bulbs aboard the ship. From 4:00 p. m. until the following morning he was in complete charge of the vessel in his capacity as shipkeeper for the defendant.

Genry was required to live aboard the vessel, but his activities were not closely supervised by the defendant. He was required to keep the mooring lights in operation, to make periodic inspections and to take daily soundings. His specific instructions outlined in "Instructions to Shipkeepers" from Hutchinson and Company, a partnership charged with management of the defendant's Steamer, John Stanton, ordered him to take precautions to safeguard the vessel against fire, to be aboard the ship at all times when work was being done by outsiders, and to exclude such persons from portions of the vessel where their work did not require them to go. He was also ordered to permit no persons "aboard or into any part of the vessel without the consent of the Port Captain" or the Hutchinson office, and, in the event consent was given, "to accompany these persons at all times." He was required to submit periodical reports to the defendant and to contact certain officers of Hutchinson and Company, Rud Machine Company or the defendant in case of emergency.

From these facts, briefly outlined, the Court concludes that the defendant retained general control and supervision of the Steamer John Stanton.

The next inquiry is whether or not the injuries sustained by the plaintiff were the proximate result of the defendant's negligence. A shipowner owes the employees of an independent contractor the duty of exercising reasonable care to provide for their safety. Miller v. The Sultana, 2 Cir., 1949, 176 F.2d 203; Lynch v. United States, 2 Cir., 1947, 163 F.2d 97 (See concurring opinion of Hand, J.); Vanderlinden v. Lorentzen, 2 Cir., 1944, 139 F.2d 995; Muratore v. United States, supra.

The creation and existence of the hole into which the plaintiff fell does not, in and of itself, constitute negligence; for it is not questioned that the cutting of the hole was essential to the work being performed by the Rud Machine employees. Nonetheless, the hole had existed for approximately two weeks prior to the accident and the defendant had notice of its existence. There was sharp conflict in the testimony concerning the obligation of furnishing lights. Assume all that the defendant urges in that respect—that the ship's generators were not in operation nor intended by either the defendant or the Rud Machine Company to be in operation during the progress of the repairs and that the Rud Machine Company by agreement assumed the exclusive obligation of furnishing light for its own use in dimly illuminated portions of the vessel by connection with shore installations and use of portable plug-in boxes. The fact still remains that the failure of the defendant to erect a barricade or other guard around the access hole or to warn the plaintiff personally of the existence of the hole were acts of negligence. See: Anderson v. Lorentzen, 2 Cir., 1947, 160 F.2d 173. Under the facts here present the shipowner cannot relieve itself of liability by agreement with a repair company. Nor may the defendant escape liability by showing a similar and concurrent obligation on the part of the plaintiff's employer. Anderson v. Lorentzen, supra; Fodera v. Booth American Shipping Corp., 2 Cir., 1947, 159 F.2d 795; Porello v. United States, 2 Cir., 1946, 153 F.2d 605; Vanderlinden v. Lorentzen, supra; LaGuerra v. Brasiteiro, 2 Cir., 124 F.2d 553, certiorari denied 1942, 315 U.S. 824, 62 S.Ct. 918, 86 L.Ed. 1220.

Here the fact that the injury producing hazard had existed for approximately two weeks prior to the accident and that the defendant, through its shipkeeper, had knowledge of the existing hazards leads to the inescapable conclusion that it failed to exercise reasonable care to provide for the plaintiff's safety. That Hill sustained his injuries as a result of his sole negligence or that

his negligence contributed to his injuries is not supported by persuasive evidence.

Plaintiff is entitled to recover the sum of $15,000.