William CONNOLLY

v.

WEYERHAEUSER STEAMSHIP COMPANY et al.

WEYERHAEUSER STEAMSHIP COMPANY, et al.,

v.

NACIREMA OPERATING CO., Inc.

No. 350, Docket 23197.

United States Court of Appeals Second Circuit.

Argued May 16, 1956.

Decided Sept. 11, 1956.

Dow & Symmers, New York City (William G. Symmers, Frederick Fish, New York City, of counsel), for defendant and third-party plaintiff-appellant.

Galli & Locker, New York City (Oscar A. Thompson, Patrick E. Gibbons, New York City, of counsel), for third-party defendant-appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

William Connolly, a Boston longshoreman employed by Nacirema Operating Co., a New York corporation, was seriously injured aboard the steamship "F. E. Weyerhaeuser" a vessel owned by Weyerhaeuser Steamship Company, a Delaware corporation, when he was struck on the head by a piece of wood while working at the bottom of No. 1 lower hold. Nacirema Operating Co. is an independent contracting stevedore and had contracted with Weyerhaeuser to discharge cargo at the ports of New York and Boston. The S. S. F. E. Weyerhaeuser had carried a full cargo of lumber, including

a deck load, from the West Coast to New York. Her deck load and part of her underdeck cargo had been discharged there by Nacirema, and the ship had then proceeded to Boston to discharge the remainder. On the fifth working day after docking in navigable water at Boston this accident happened. The piece of wood that struck Connolly was approximately four feet long, eight inches wide and one inch thick. There was credible evidence that the only possible place from which it could have fallen was the top of a temporary shelter over the winches at No. 1 hatch, presumably erected by the longshoreman employes of Nacirema solely to protect them against the weather. This particular shelter was about 4 ft. x 6 ft. and some 7 ft. high. It was constructed of scrap lumber nailed together, and a tarpaulin was nailed across the top.

There was testimony from which the jury could reasonably conclude that at the time of the accident there was a loose second tarpaulin on top of the first one, not nailed down but held down by three boards of about the same size, and that one of these fell down the hatch into the hold and caused the injury.

Connolly alleged two causes of action against the shipowner Weyerhaeuser, one claiming the defendant negligent and the other claiming the ship unseaworthy. Weyerhaeuser brought a third-party complaint against Nacirema alleging the injury was caused by Nacirema's negligence and that Nacirema's contract with the shipowner entitled it to be indemnified for any damages that Connolly might recover from Weyerhaeuser.

The case was tried to a jury. The trial judge first submitted Connolly's case against Weyerhaeuser with a statement

he was reserving submission of the cross-action until reception of the first verdict. The jury returned a verdict in favor of Connolly in the negligence cause of action and in favor of the ship in the unseaworthiness cause of action.[1] Thereupon the Court directed a verdict in favor of Nacirema in the third-party action for indemnity. Weyerhaeuser appeals from this directed verdict and from the failure of the trial court to grant its motion for a directed verdict against Nacirema. Connolly is not a party to this appeal. His judgment against the shipowner has been paid and satisfied. The appeal before us relates only to the third-party proceedings.

The undisputed testimony was that shelters similar to the one at No. 1 hatch are routinely erected on the ships' decks by longshoremen at all United States ports upon the arrival of cargo vessels; that they serve no purpose except for the personal convenience of the winch drivers; and that, the cargo having been discharged, the ships' crews tear them down as part of the process of squaring away the deck and making ready for sea again.

There was a sharp conflict in the evidence on a most material point. Fellow longshoremen who worked with Connolly testified that when the S. S. "F. E. Weyerhaeuser" docked at Boston, shelters were already construted at most of its hatches, including No. 1 hatch, so they did not construct a shelter at No. 1 hatch although they had arrived at shipside prepared to do so. The ship's officers emphatically denied that any shelters were on deck when the vessel docked. There was no testimony tending to show the ship's crew constructed them; and the only fair inference from the jury verdict

---

1. The trial court's charge on the issue of unseaworthiness appeared to exclude from the jury's consideration the condition of the winchmen's shelter. However, the correctness of the charge on the issue of unseaworthiness was not before us on this appeal. Therefore, we need not resolve the question that perhaps there might have been a conflict between that charge and the holding in the case of

Petterson v. Alaska S.S. Co., 9 Cir., 1953, 205 F.2d 478, affirmed 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, which appears to hold that a shipowner is liable on the ground of unseaworthiness for injuries received by an employee of a stevedoring company where injuries are caused by defective gear (a breaking block), brought on board by the stevedoring company.

must be that they were erected there by longshoremen at the port of New York, who, like Connolly, were employees of Nacirema. The master stated that it "would be carelessness on the part of myself and the chief mate" if shelters erected in New York had been left on the vessel on its way to Boston, and the chief officer testified that it was his job to see that these shelters were taken down and that he would have been derelict in his duty if any were on the ship upon arrival in Boston.

The Court charged the jury that Connolly could not recover damages from the shipowner if the jury should find that the shelters were not in place when the ship arrived in Boston. The jury verdict in favor of Connolly therefore establishes that the shelter over the winch drivers at No. 1 hatch was built before the ship arrived at Boston, that a board on top of it fell from it causing the injury, and that the shipowner negligently failed to perform a duty it owed to Connolly under the circumstances.

In this setting the shipowner now claims that Connolly's employer failed to perform a duty owed to the shipowner; that there would have been no injury to Connolly if this duty had been properly performed; and that therefore the stevedore company should indemnify the shipowner the amount of Connolly's judgment.

Even though the shipowner be found not liable for unseaworthiness it may be found liable in a negligence action if it does not provide a reasonably safe place for a business visitor, Palazzolo v. Pan-Atlantic S. S. Corp., 2 Cir., 1954, 211 F.2d 277, affirming the district court on this issue, D.C., 111 F.Supp. 505; Fodera v. Booth American Shipping Corp., 2

Cir., 1947, 159 F.2d 795; Vanderlinden v. Lorentzen, 2 Cir., 1944, 139 F.2d 995. This is a duty the shipowner cannot delegate. It was clearly on this doctrine that the shipowner here was held liable.[2]

The unsafe condition of the shelter (more specifically the loose board on the top thereof) was the proximate cause of the injury. Assuming a careless erection of the structure by longshoremen in New York the injury did not occur in New York, but in Boston—and in the meantime the structure was there to be seen on the ship's deck, and the ship had exclusive control over it. The ship negligently departed from established practice in not removing it. It was built to last only as needed in New York, and the New York longshoremen had no reason to anticipate that the structure would be standing when the vessel reached Boston and be offered as a shelter to the longshoremen there. If the New York-built structure had been removed, as all rules of good seamanship dictated, the Boston longshoremen would have erected their own shelter. Offering a ready-made shelter to Connolly the ship could not shift its nondelegable responsibility for the unsafe condition thereof onto Connolly's employer.

However, Weyerhaeuser relies upon Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, affirming our decision in Palazzolo v. Pan-Atlantic S. S., Pan-Atlantic S. S. v. Ryan Stevedoring Co., supra. In that case a stevedoring contractor was found liable to reimburse a shipowner for damages paid by the latter to one of the contractor's longshoremen on account of injuries received by him in the course of his employment on shipboard where the contractor, without entering into an ex-

---

2. The court charged the jury, on the issue of the ship's negligence, as follows:

"Now, if you find from the evidence that the structure, that is, this shelter, was on the ship when it came into Boston Harbor and that the ship offered it to the stevedores to use and work with, and if you find that in permitting that to be there the ship was guilty of some act of

negligence as I have defined it to you, then you could find a verdict for Mr. Connolly. But if you find that the shelter was not on that ship as he claims, or if you find that the accident did not happen as he claims it happened, then on this issue of negligence you would have to bring in a verdict for the ship."

press agreement of indemnity, contracts to perform a shipowner's stevedoring operation and the longshoreman's injuries are caused by the contractor's unsafe stowage of the ship's cargo. Indemnity was awarded on the theory that there had been a breach by the contractor of its consensual implied obligation to stow cargo in a reasonably safe manner and thus to save the shipowner harmless for failure to do so.

We do not consider the Ryan Stevedoring case controlling here. Though some of the facts are strikingly similar, there is a crucial fact here that is just as strikingly dissimilar, a fact that we believe differentiates the two cases and requires different results. In neither case was there an express agreement of indemnity. By written contract Nacirema undertook "to faithfully furnish such stevedoring services as may be required" and to provide "foremen and such other stevedoring supervision as are needed for the proper and efficient conduct of the work." In Ryan the agreement was to perform all stevedoring operations. In the Ryan case Ryan's longshoremen in Georgetown, South Carolina improperly stowed rolls of pulp board weighing about 3200 pounds each in a hatch of a vessel operated by Pan-Atlantic Steamship in coastwise service. When the cargo was discharged at Brooklyn one of these improperly stowed rolls broke loose and injured a Ryan longshoreman there, one Frank Palazzolo. Palazzolo, having sued Pan-Atlantic alleging both negligence and unseaworthiness, recovered judgment on a general jury verdict. The judgment we, in Palazzolo v. Pan-Atlantic, supra, and then the Supreme Court in affirming us, required Ryan to indemnify.

A majority of the Supreme Court held that in agreeing to perform all of the shipowners' stevedoring requirements the stevedoring contractor agreed to discharge *"foreseeable* damages resulting to the shipowner from the contractor's improper performance of those requirements." (Italics ours.) Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, at page 129, 76 S.Ct. 232,

at page 235, footnote 3, and authorities there cited.

It is precisely this fact of foreseeability that differentiates the cases. In the direct performance of its contractual duty of proper stowage a stevedoring contractor is obviously chargeable with knowledge that improperly stowed cargo capable of rolling, moving, falling or propelling itself, might do so when the cargo is discharged, and thereby cause someone injury, which injury is directly traceable without any intervening factors to the original improper stowage. This is the Ryan case. But it is not the instant case. Here, a flimsy shelter built on deck for the convenience of longshoremen at one port, which it was negligent for the ship's officers not to have removed before docking at the second port, was permitted to remain in place by the ship's crew and was offered as a safe place to work to a longshoreman at the second port, thereby causing him injury.

This independent failure of duty by the ship could not have been reasonably foreseen by the stevedoring contractor. It was a negligent act of the ship alone not directly traceable to a breach of a duty to properly stow cargo.

The judgment below is affirmed.

LUMBARD, Circuit Judge (dissenting).

In my view this case is governed by Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, affirming Palazzolo v. Pan-Atlantic S. S. Corp., 2 Cir., 1954, 211 F.2d 277. Since there was evidence in the record to support a jury finding that it was the active negligence of Nacirema which caused the plaintiff's injury, the direction of a verdict for Nacirema was erroneous.

My colleagues do not deny that the evidence in this case would be sufficient to support a jury finding that the loose boards were placed upon the winch shelter by Nacirema's longshoremen in New York. Nor do I understand them to deny that under the contract between Nacirema and Weyerhaeuser, Nacirema had a duty to perform its loading and unloading

operations in a reasonably safe and workmanlike manner and an obligation to indemnify Weyerhaeuser for any injury to it resulting from the negligent conduct of the unloading and loading operations. Indeed this much indisputably follows from the Ryan case.

The majority seeks to distinguish the Ryan case by arguing that here Weyerhaeuser was guilty of intervening active negligence in failing to tear down the shelter upon leaving New York, and that this negligence by Weyerhaeuser absolves Nacirema of responsibility. The majority seems to employ this argument in two ways. First, it is argued that Nacirema's negligence was not a proximate cause of the injury to Connolly because it was not foreseeable that Weyerhaeuser would fail to remove the shelter before the ship reached Boston. Second, it is argued that even if Nacirema's negligence was a proximate cause of the accident, Weyerhaeuser is barred from recovering indemnity because it was guilty of independent active negligence which contributed to the injury.

Let us assume with the majority, that Weyerhaeuser was guilty of negligence as a matter of law in failing to tear down the shelter. Such negligence is not implicit in the jury's verdict in favor of Connolly since that might well have been based on Weyerhaeuser's failure to detect the negligent construction of the shelter rather than its failure to tear it down upon leaving New York. But all of the testimony in the case indicates that it was the custom to remove such shelters upon leaving port and that it was dangerous to leave them standing when the ship went to sea.

But merely because Weyerhaeuser was guilty of intervening negligence, it does not necessarily follow that the chain of causation was broken between Nacirema's negligence and the injury to the longshoreman. Where a person negligently creates a risk of harm, he is not ordinarily permitted to escape liability merely because he assumed that someone else would, in the performance of an independent duty, terminate or protect against the risk which he created. Cf. Restatement of Torts §§ 447, 452. But even if we assume that Nacirema was entitled to rely on Weyerhaeuser's tearing down the shelter, and even if we assume that it was unforeseeable that Weyerhaeuser might fail in this duty, it does not follow that Nacirema was guiltless of negligence which caused the injury. Nacirema had a continuing duty to use in its work reasonably safe equipment and reasonably safe methods. When it commenced unloading in Boston its employees presumably discovered and used this structure which had been constructed by its employees in New York. Even if the risk resulting from the negligence in New York had ended, a new risk arose when Nacirema began to use in Boston the negligently constructed shelter. Merely because the shelter had been allowed to stand while the ship traveled from New York to Boston it does not follow that it in some way became a part of the ship so that responsibility for it passed over from the stevedore to the shipowner. It was still a piece of equipment supplied by the stevedore for use in its work, and responsibility for its dangerous condition rested primarily on the stevedore. Therefore I cannot agree that a jury could not have found that Nacirema's negligence was a proximate cause of the accident.

Nor am I convinced that Weyerhaeuser was guilty, as a matter of law, of active negligence such as would bar indemnity. I have assumed that Weyerhaeuser was guilty of negligence in failing to dismantle the shelter upon leaving New York. I am willing to admit also that this negligence was active negligence. It does not follow, however, that this active negligence was a proximate cause of the injury to Connolly.

Weyerhaeuser's duty to tear down the shelter was quite unrelated to the defectiveness of the shelter or to the risk resulting from its dangerous condition. The custom was to tear down all such shelters, defective or not, because it was

dangerous to have such structures on a ship at sea. The testimony was that high winds at sea might blow them down causing a risk of injury from flying timbers. If the plaintiff here had been a seaman injured in this manner while on the voyage, I have no doubt that Weyerhauser would be liable for its negligence in leaving the shelter standing.

In this case, however, Connolly's injury did not occur at sea and did not result from the risk created by Weyerhaeuser's breach of its duty to tear down the shelter. Suppose, for example, that Weyerhaeuser had removed the shelter upon leaving New York and had handed it over to the stevedore upon arriving in Boston. Weyerhaeuser would not then be guilty of any active negligence, but if the stevedore had continued to use the shelter the accident would still have happened.

It is true that Weyerhaeuser had the additional duty of providing the longshoremen with a safe place to work and that the jury has properly found it liable for a breach of this duty. But insofar as Weyerhaeuser is liable only for allowing Nacirema to use an unsafe shelter, its negligence is passive, not active. Its negligence in this respect is comparable to the negligence of the shipowner in the Ryan case. There the owner had a duty to supervise and inspect the loading of the cargo. This duty was nondelegable and the shipowner was held liable for failing to perform it. But the Supreme Court held in the Ryan case that this negligence did not bar indemnity from the stevedore which was primarily responsible for the loading. In the same manner Weyerhaeuser's failure to inspect the shelter used by Nacirema does not bar it from recovering indemnity for injuries resulting from Nacirema's failure to use proper equipment.

The district court should have left the issue of Nacirema's liability to the jury. We should, therefore, reverse and remand for that purpose.