Glen TITUS, Libelant,

v.

THE SS SANTORINI, her engines, tackle and gear, and all persons claiming any interest therein, and Madam Cadio G. Sigalas, et al., owners, and Pacific Atlantic Steamship Company, charterer, Respondents.

Civ. No. 7957.

United States District Court
D. Oregon.

Jan. 8, 1957.

**64**

Peterson & Pozzi, Portland, Or., Frank H. Pozzi, Portland, Or., of counsel, for libelant.

Wood, Matthiessen, Wood & Tatum, Portland, Or., Erskine B. Wood, and John R. Brooke, Portland, Or., of counsel, for respondents.

CLARK, District Judge.

This is an action brought by libelant Titus against the SS Santorini, her engines, tackle and gear and her owners and the charterer. The vessel was lying in port at Coos Bay, Oregon, to load a cargo of lumber. Libelant was an employee of the Independent Stevedoring Company, an independent contractor, who had contracted to do the loading of the ship.

During the process of loading the ship, February 5, 1955, the preventer wire and rope guy for the starboard boom at the No. 2 hatch parted, allowing the load on the cargo hook to swing. The libelant, who was then acting as hatch-tender, in order to avoid being struck by the cargo, ran across the deck, slipped and fell, causing his present injuries.

The libelant seeks to recover damages for his injuries on the grounds of the unseaworthiness of the vessel and the negligence of the respondent owners and operators.

Upon the completion of the trial of this case, the Court announced its verdict in favor of the libelant and asked for Findings and Judgment in accordance therewith. Thereafter, the Court withdrew its opinion and asked counsel to submit briefs on the questions of the vessel's unseaworthiness and the negligence of the owners, feeling that the Court should further deliberate those matters.

While the Court asked only for a transcript of the respondents' testimony, the Court has studied the complete record and all the evidence presented, together with brief presented by respective counsel.

■ There is no question but that an employee of the stevedoring company can recover from the ship and its owners, for injuries received as a proximate result of the vessel's unseaworthiness or the negligence of its owners and operators, Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099. The existence of unseaworthiness and the issue of negligence are the only questions involved here.

■ The rule is that the burden is with the libelant to prove the allegations of its petition. The libelant here proceeded on the theory, apparently, that upon a showing that the gear was being used "in a customary and usual manner" and it breaks, the inference is that it would not break unless it was defective or unseaworthy, and relies upon the case of Petterson v. Alaska S. S. Co., 9 Cir., 205 F.2d 478, 1953 A.M.C. 1405, affirmed 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, 1954 A.M.C. 860. In the Petterson case a block, which was being used in the loading operation, broke. There was no proof as to the condition of the block prior to its use, other than what may be implied from the accident itself.

In the present case the evidence is to the effect that the preventer wire which gave way was brand new. The preventer wire on the same boom with which we are here concerned had given way the day preceding this break and the evidence shows that the boom was rerigged with brand new unused wire of a hard European type. The metalurgical expert, called by respondent, as a finding in laboratory tests, testified that the parted wire was not defective. He was unable to find any wear, corrosion, brittleness or other defect in the wire, but concluded that the wire had broken because of tensile pull. The force exerted on it was greater than its breaking strength.

There is no great conflict in the evidence, although there appears to be some

controversy over how far from the pad eye the wire broke, the contention being that if it broke within six inches of the pad eye the break would have been the result of a weakening effect caused by the bend at the pad eye. The evidence clearly shows the break occurred at least a foot or foot and a half above the pad eye.

There is some further contention that there was negligence because there was only one cleat forward of the pad eye whereas there should have been two; that every time the wire went around a cleat its strength was increased and so with more cleats this wire would have been stronger. The record shows that ships of this type have only one cleat, that was not unusual and the ship was rigged in the ordinary and customary manner where there is only one cleat forward of the pad eye.

The question here finally resolves itself into a determination of whether the libelant can recover for alleged injuries by showing that the gear was being used, and the loading was being done, in a usual and customary manner; a break occurred, and as a result the libelant was injured, in the face of testimony presented by the respondent that the wire which broke was not defective—but that it was seaworthy.

In other words, will an inference that the vessel was unseaworthy arising from the fact that a preventer wire broke, prevail when there is an affirmative showing that there was no defect in the wire?

The Court is not concerned with the allegations of negligence as there was no negligence whatsoever shown in this case.

■■ As has been stated the burden rests on the libelant to prove the allegations of unseaworthiness, and where there is nothing shown to the contrary, it may be presumed that was the case merely because the accident happened while the gear was being used in the usual and customary manner. However, here the presumption is overcome with evidence to the contrary, making it necessary that there be some further affirmative showing on the part of the libelant that the unseaworthiness alleged existed. There is no such showing here.

Witnesses for libelant testified that they didn't know why the wire and guy rope broke, but yet the break occurred. The load was not too heavy for the size of wire used, and the wire was new without defect. The record shows, further, that a strand of wire from the point at which the break occurred was taken by the libelant to a metalurgical expert for analysis as to cause of the break, and yet that wire was not produced and that expert witness did not appear on libelant's behalf. There was some suggestion that the break could have been caused by tight lining—one winch pulling against the other until the force exerted was greater than the strength of the wire causing it to give way. It should be noted that this was only a suggestion; there is no evidence in the record that such was the case.

The Court in the Petterson case, supra, [205 F.2d 479], said that in cases of this type we deal with a species of strict liability regardless of fault. "It is only necessary to show that the condition upon which the absolute liability is determined—unseaworthiness—exists."

■ The evidence does not support a finding of unseaworthiness.

To say the respondents were liable in a fact situation such as exists here would broaden the liability even beyond that of the Petterson case, supra.

Attorneys for Respondents may prepare Findings of Fact, Conclusions of Law and Judgment, submitting original to the Court and serving a copy on opposing counsel.