John BISHOP, Libelant

v.

UNITED STATES of America, Respondent

and

Monti Marine Corporation, Respondent-Impleaded.

No. 20616.

United States District Court
E. D. New York.

Oct. 10, 1958.

Jacob Rassner, New York City, for libelant, Francis J. Nicosia, New York City, of counsel.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., for respondent, Benjamin H. Berman and William A. Wilson, Admiralty and Shipping Section, Dept. of Justice, New York City, of counsel.

Charles G. Tierney, New York City, for respondent-impleaded, Raymond C. Green, New York City, of counsel.

ABRUZZO, District Judge.

This suit in Admiralty was instituted by the libelant to recover damages for injuries he received on board the U. S. Naval Ship, General C. C. Ballou, on May 30, 1954. He was employed by Monti Marine Corporation, hereinafter referred to as Monti, which was impleaded by the United States of America, the respondent and owner of the vessel.

The libelant contends that the vessel was unseaworthy and that there was a failure on the part of the respondent, United States of America, to provide libelant a safe place within which to work. Monti, a general contractor, was deactivating the vessel pursuant to an agreement with the United States of America. The Government claims that the respondent-impleaded Monti is obligated to reimburse it in the event that libelant recovers judgment against it by reason of an indemnification clause in the deactivation agreement.

On the day of the accident the libelant was working in the blower room of No. 4 hatch removing plugs from drain pipes. He testified that at about 10 A.M. while attempting to remove a "frozen" or corroded plug in an overhead drain pipe located about six or seven feet above the deck, he stood on a ladder holding a two-foot Stillson wrench while his partner, one William Tighe, put a length of pipe, five or six feet in length, to the wrench handle for leverage. The libelant claims he was holding the wrench while Tighe did all the pulling. The plug suddenly loosened, the wrench slipped, and libelant fell from

the ladder and was injured. The libelant claims the ship owner failed to furnish him with a seaworthy appurtenance in that the top platform of the ladder was missing, thereby causing it to be wobbly and shaky.

In an examination before trial libelant testified that on the day of his accident he spoke to his foreman stating the need for a ladder. The foreman told him the ship would provide one. He then spoke to a mate or storekeeper who told him that there were ladders all over the ship, and within ten feet of the blower room in the No. 4 hold he picked up the one he used. The color of the ladder was gray, the same as that of the ship. The ladder was described as an "A" type ladder and when opened it formed a letter "A." Instead of opening the ladder into an "A," libelant rested it up against a blower or motor in a closed position and stood upon it. The brackets which ran from the front legs to the back legs were in good condition and there was nothing wrong with the ladder except that the top platform was missing.

At the close of the trial it was stipulated by the parties that the United States of America, the owner of the ship, owned four ladders which were on the vessel and that they were all in good condition, and that with the exception of these four ladders all other ladders on board the ship at the time of the accident were owned either by the respondent-impleaded or one of its subcontractors, or one of its employees, or its subcontractor's employees.

Tighe contradicted the libelant in almost every respect. He testified that he was not with the libelant at the time he was injured but was about 100 feet away. At that time he was going for a piece of extension pipe to be used for leverage on the Stillson wrench. No parts of the ladder were missing and it was perfect in every respect. Tighe testified that he obtained the ladder the libelant claims was defective the day before, had used it and that it was spattered with paint. He testified further that libelant used the ladder early on the morning of the day of the accident and before the accident. It is not clear from the evidence who owned the ladder.

A vessel or her owner is liable for injuries received by a seaman in consequence of the unseaworthiness of a ship. The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. This liability was extended to an employee of a stevedoring company engaged in the loading of a ship for injuries resulting from defective equipment brought on board by the stevedoring company. Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.

The duty of a ship owner to one working aboard a ship who is not a member of the crew is amply set forth in Alaska Steamship Co. v. Petterson, supra. The test as to whether the warranty of unseaworthiness is applicable in a given case is whether the work is of a kind that traditionally the crew was accustomed to perform. Halecki v. United New York & New Jersey Sandy Hook Pilots Ass'n, 2 Cir., 251 F.2d 708. "Mothballing" of a ship is not traditionally the task of a crew and there is no warranty of seaworthiness.

The believable evidence indicates clearly that this ladder was in good condition and was not defective. In view of that finding, the ship was not unseaworthy. There was no evidence of negligence on the part of the owner of the vessel. The libelant, therefore, must be non-suited.

It is evident from the proof that the libelant did not use this "A" type ladder in a proper manner. It was his duty to open the ladder into an "A" position, the manner in which it was intended to be used.

As to the contention that the libelant comes within Section 240 of the New York State Labor Law which partially reads as follows as pertains to the case at bar: "A person employing or directing another to perform labor of any kind" upon a structure shall fur-

nish, or cause to be furnished for the performance of such labor, "ladders * * * which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed."

This section does not apply because it does not appear that the respondent or any of its employees at any time gave the libelant any instructions or direction as to the manner in which the libelant was to perform his work, or any instructions or direction as to how or where he was to place the ladder.

A decree may be entered in favor of the respondent, United States of America. In view of this finding, the impleading petition as against Monti is dismissed.