**Arne Armus LAHDE, Appellant,**

v.

**SOC. ARMADORA DEL NORTE, a Corporation, Claimant of THE Steamship THEOGENNITOR, etc., Appellee.**

**No. 14155.**

United States Court of Appeals,
Ninth Circuit.

March 16, 1955.

See also D.C., 107 F.Supp. 664.

Zabel & Poth, Oscar A. Zabel, Philip J. Poth, Seattle, Wash., for appellant.

Summers, Bucey & Howard, Lane Summers, Charles B. Howard, Lewis H. Johnson, Seattle, Wash., for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

Lahde appeals from a decree of the District Court dismissing without a hearing on the merits his amended libel in rem against the steamship Theogennitor in which he, a stevedore, sought damages for injuries arising from his falling into an open hatch in an illy lighted passageway leading to his place of work. The grounds of the dismissal are that the libel failed to allege a cause of action either based on unseaworthiness of the vessel or on negligence on the part of the officers and crew.

A. *The Libel Sufficiently States the Injuries were Caused by the Vessel's Unseaworthiness.*

The libel alleges that the stevedore came on board the vessel as an invitee to remove a stringer of timber on the starboard side of the ship, the removal a part of stevedoring the ship. To reach the stringer he would pass from an open door on the portside of the ship, enter the 'tween deck space and walk to an open door on the starboard side. The 'tween deck space was dimly lighted and nevertheless had an open hatch from which two hatchboards had been removed. This dangerous condition, the libel alleges, was known "to the owner, master and crew".

In this dimly lighted area the stevedore fell through the open hatch and was injured. The libel continues with the allegation, "Thirteenth: Said accident was caused, without any contributing fault or neglect on the part of the libelant, solely and proximately by the defective, unsafe, and *unseaworthy condition* of the vessel and its failure to provide proper and sufficient ways, works, means and appliances;" (Emphasis supplied.) The above allegations clearly state a cause of action for damages caused by the vessel's unseaworthiness. The parties agree that a libel in rem against the vessel may be maintained by the stevedore for injuries from such unseaworthiness.

However, under recent decisions of the Supreme Court, we think such a cause of action is stated even though the unseaworthy condition is unknown to the owner. Boudoin v. Lykes Bros. Steamship Co., Inc., 75 S.Ct. 382. There Boudoin, a seaman, recovered damages for a blow on the head from another seaman. The attacking seaman, on evidence of his conduct *after* his attack, was found to have a savage and vicious nature, so different from the ordinary seaman that his presence made the vessel unseaworthy and recovery was based on that ground. There is not the slightest evidence that the owner knew or could have known the vicious character of the attacking seaman when Boudoin was hit on the head and the cause of action arose. The district court held the vessel unseaworthy because of the attacking seaman's vicious nature and that "the warranty of seaworthiness is a kind of liability without fault in which knowledge of the circumstances creating the unseaworthiness is immaterial." Boudoin v. Lykes Bros. S. S. Co., D.C., 112 F.Supp. 177, 180. The court of appeals reversed, holding that the "shipowners" were not shown to

have knowledge of the seaman's character.

The Supreme Court in reversing the court of appeals and affirming the district court, stated [75 S.Ct. 385]:

> "We see no reason to draw a line between the ship and the gear on the one hand and the ship's personnel on the other. A seaman with a proclivity for assaulting people may, indeed, be a more deadly risk than a rope with a weak strand or a hull with a latent defect."

The failure to replace the gear of the two hatchboards on the open hatch in the dim light is certainly as dangerous as unseaworthiness as the vicious nature of a crew member. Here, as in the latter case, the vessel would be liable though the unseaworthiness is unknown to the owner.

So also in the recent case of Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. There Hawn, a carpenter invitee of the shipowner to be on the ship, as was stevedore Lahde here, was injured, as was Lahde, by falling into an open hatch. Hawn was held entitled to damages since the open hatch created unseaworthiness in the vessel. There is no mention in the opinion that the shipowner knew the hatch was open.

The case of Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 456, 88 L.Ed. 561, was not under the Jones Act, 46 U.S.C.A. § 688, but rested on general maritime law. The court, in holding Mahnich entitled to damages, stated:

> "Petitioner, a seaman on respondent's vessel, the 'Wichita Falls', was injured, while at sea, by a fall from a staging, which gave way when a piece of defective rope supporting it parted. The rope was supplied by the mate when there was ample sound rope available for use in rigging the staging. The question is whether the defect in the staging was a breach of the warranty of seaworthiness rendering the owner liable to indemnify the seaman for his injury.

> *     *     *     *     *     *

> "In thus refusing to limit, by application of the fellow servant rule, the liability of the vessel and owner for unseaworthiness, this Court was but applying the familiar and then well established rule of *non-maritime torts*, that the employer's duty to furnish the employee with safe appliances *and a safe place to work*, is nondelegable and not qualified by the fellow servant rule.     *     *     * It would be an anomaly if the fellow servant rule, discredited by the Jones Act as a defense in suits for negligence, were to be resuscitated and extended to suits founded on the warranty of seaworthiness, so as to lower the standard of the owner's duty to furnish safe appliances below that of the land employer.

> "The staging from which petitioner fell was an appliance appurtenant to the ship. It was unseaworthy in the sense that it was inadequate for the purpose for which it was ordinarily used, because of the defective rope with which it was rigged. Its inadequacy rendered it unseaworthy, whether the mate's failure to observe the defect was negligent or unavoidable. Had it been adequate, petitioner would not have been injured and his injury was the proximate and immediate consequence of the unseaworthiness. See The Osceola, supra, 189 U.S. [158] at pages 174–175, 23 S.Ct. [483] at pages 486, 487, 47 L.Ed. 760, and cases cited. Any negligence of the mate in selecting the rope and ordering its use as a part of the staging, or of the boatswain in using it for that purpose, could not relieve respondent of the duty to furnish a seaworthy staging. *Whether petitioner* [the owner] *knew of the defective condition of the rope does not appear, but in any case the seaman, in the performance of his duties, is not deemed to assume the risk of unseaworthy appliances.* The Arizona

v. Anelich, supra, 298 U.S. [110] at pages 123–124, 56 S.Ct. [707] at pages 711, 712, 80 L.Ed. 1075; Beadle v. Spencer, supra, 298 U.S. [124], at pages 129–130, 56 S.Ct. [712], at pages 714, 715, 80 L.Ed. 1082; Socony-Vacuum Oil Co. v. Smith, supra [305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265]." (Emphasis supplied.)

█ The shipowner as much owed to its invitee stevedore as to a sailor the duty to furnish "the employee * * * a safe place to work" and "is nondelegable" as it is not in "non-maritime

█ It is immaterial whether the shipowner, invitor of the stevedore on the ship, knew of the failure to place the ship's "appliances", here two hatch-boards, on the open hatch dangerous in the defective lighting, since it owed the same "nondelegable" duty to furnish him a safe place to work as does a land employer.

**B. A Stevedore May Recover in rem Against the Ship to Which the Owner Invites Him for the Negligence of its Crew Members.**

█ This court so held in The Joseph B. Thomas, 9 Cir., 86 F. 658, where the stevedore working in the hold was injured by a keg falling through the hatch hold above him. A sailor negligently caused the keg to fall from a pile of hatch covers on which it rested. This case is followed by our decision in the Aymeric, 9 Cir., 26 F.2d 173, where we considered the merits of the contention that the charged negligence of crew members which injured a stevedore creates a right to libel in rem but upheld the finding of the lower court that there was no negligence. We held similarly in The Santa Cecilia, 9 Cir., 22 F.2d 251, *where recovery in rem* was denied because no negligence was shown.

Likewise in the Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586, the longshoremen recovered in rem for injuries resulting from the ship's officers' negligence. So also in Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471, where a widow recovered in rem for the death of her husband caused by negligence, he being an invitee on the vessel. So also in The Helios, D.C.S.D. N.Y., 12 F. 732; Gerrity v. The Bark Kate Cann, D.C.E.D.N.Y., 2 F. 241.

We have also held that the stevedore may recover in admiralty in personam for the negligence of the crew. Tide Water Associated Oil Co. v. Richardson, 9 Cir., 169 F.2d 802; Grays Harbor Stevedore Co. v. Fountain, 9 Cir., 5 F.2d 385.

Appellee contends that all these cases are against the law as it is today. Now, it contends, the stevedore's status must be deemed identical with that of a seaman in his relationship with the owner and the vessel. It relies on International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, involving the Act of June 5, 1920, 41 Stat. 988, 1007, 46 U.S.C.A. § 688, giving seamen the same right to sue the employer as is given railway employees. In holding that a stevedore working on a vessel was entitled to the same right the court states:

"It is true that for most purposes, as the word is commonly used, stevedores are not 'seamen.' But words are flexible. The work upon which the plaintiff was engaged was a maritime service formerly rendered by the ship's crew. Atlantic Transport Co. [of West Virginia] v. Imbrovek, 234 U.S. 52, 62, 34 S.Ct. 733, 58 L.Ed. 1208. We cannot believe that Congress willingly would have allowed the protection to men engaged upon the same maritime duties to vary with the accident of their being employed by a stevedore rather than by the ship. The policy of the statute is directed to the safety of the men and to treating compensation for injuries to them as properly part of the cost of the business. If they should be protected in the one case they should be in the other. In view of the broad field in

which Congress has disapproved and changed the rule introduced into the common law within less than a century, we are of opinion that a wider scope should be given to the words of the act, and that in this statute 'seamen' is to be taken to include stevedores employed in maritime work on navigable waters as the plaintiff was, whatever it might mean in laws of a different kind."

Ignoring the words "It is true that for most purposes, as the word is commonly used, stevedores are not seamen" appellee contends that stevedores for *all* purposes are seamen and, since it is unquestioned that seamen in the absence of statute cannot recover for negligence of fellow crew members, the stevedore cannot.

Appellee also relies on language in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, holding that for the "purpose" of the liability there claimed the stevedore's rights are the same as a seaman's, the court stating 328 U.S. at page 99, 66 S.Ct. at page 879:

"* * * for injuries incurred while working on board the ship in navigable waters the stevedore is entitled to the seaman's traditional and statutory protections, regardless of the fact that he is employed immediately by another than the owner. *For these purposes* he is, in short, a seaman because he is doing a seaman's work and incurring a seaman's hazards." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99, 66 S.Ct. 872, 90 L.Ed. 1099. (Emphasis supplied.)

The "purpose" of the Sieracki case was the determination of the stevedore's right to recover in a civil action at law for an injury due to the vessel's unseaworthiness. As to this the holding is that the stevedore is identical with the seaman. From this, the reasoning of appellee again jumps to the conclusion that for *all purposes* the rights of the stevedore are the same as those of the seaman and since the seaman has no right to recover for the negligence of the officers and crew, either in rem or in personam, the stevedore has no such right.

The Supreme Court holds to the contrary in Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. That is a case at common law in which Hawn, aboard the ship as carpenter employed by a firm engaged to repair it, sued the shipowner for injuries arising from the negligence of the shipowner. The Court held that the shipowner's liability was that of the admiralty law. It disposes of appellee's contention concerning the case of Seas Shipping Co. v. Sieracki, adversely to appellee, stating 346 U.S. at page 413, 74 S.Ct. at page 207: "The fact that Sieracki upheld the right of workers like Hawn to recover for unseaworthiness does not justify an argument that the Court thereby blotted out their long-recognized right to recover in admiralty for negligence."

The "long recognized right" of the stevedore is to recover both in personam and in rem for such negligence. We hold that our decision in the case of The Joseph B. Thomas states the law as it is today and that stevedore Lahde's libel properly alleges his claim that he is entitled to recover in rem from the steamship Theogennitor for his injuries arising from the negligence of members of its crew.

The decree is reversed.