JOHNSON LINE, a Corporation,
Appellant,

v.

Shaun MALONEY, Appellee.

No. 15244.

United States Court of Appeals
Ninth Circuit.

April 9, 1957.

Bogle, Bogle & Gates, Robert V. Holland, Seattle, Wash., for appellant.

Zabel & Poth, Oscar A. Zabel and Philip J. Poth, Seattle, Wash., for appellee.

Before HEALY, LEMMON, and CHAMBERS, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal from a decree in admiralty awarding appellee the sum of $22,300 and costs for injuries suffered while in the course of his employment as a longshoreman aboard the SS Golden Gate, a merchant vessel owned and operated by appellant.

But two questions are raised on the appeal, and these are quite narrow. One is whether or not, under the evidence, the trial court erred in refusing to apply to the case the so-called "rule of transitory unseaworthiness," otherwise known as the Cookingham doctrine.[1] The other contention is that the damages awarded are excessive.

The accident occurred June 23, 1953, while the Golden Gate was at a dock in Seattle, Washington. Prior to coming to Seattle wheat had been loaded on the vessel at Tacoma. The W. R. Grace Company, the concern which was to do the stevedoring at Seattle, had also done the work of loading the wheat at Tacoma, Grace being under contract with appellant. Appellee was hired by the Grace Company at Seattle as one of the gang of longshoremen to work aboard the vessel there. He did not know where the Golden Gate had come from except that it had come from the sea.

About 8:30 A.M. of the day in question, in the course of his employment, appellee was obliged to descend to the 'tweendeck of No. 7 hatch of the Golden Gate, he and the other stevedores in his gang having been instructed by their foreman to uncover the hatch and go in 'tweendecks to discharge the cargo in the lockers and wings. Appellee was the first to go down. In descending he was facing the ladder and was unable to

---

1. Cookingham v. United States, 3 Cir., 184 F.2d 213, certiorari denied 340 U.S. 935, 71 S.Ct. 495, 95 L.Ed. 675.

see what was below. Taking a step or two upon reaching the bottom he slipped, and in trying to maintain his balance extended his hand and fell violently in such manner as to cause the weight of the fall to be borne on the ends of his fingers.

Concededly the slippery condition of the surface of the 'tweendeck was traceable to the presence of wheat dust and wheat kernels, and counsel for appellant do not contest the proposition that appellee was furnished by the ship with an unsafe place to work. What they argue is that the shipowner was not shown to have had notice of the unsafe condition, hence, they say, the transitory unseaworthiness doctrine should apply.

There was no affirmative showing that the debris on the deck incident to the loading of the wheat had been cleaned up following the Tacoma operation. A Mr. Dibble, who was supercargo on the Golden Gate for the Tacoma job, testified that it was part of the longshoremen's work to clean the deck after wheat was loaded. He did not, however, recollect seeing anyone cleaning the deck of No. 7 hold. Another witness for appellant, the stevedoring foreman, Patterson, testified that in small operations it is the custom of the longshoremen to do the work of cleaning, but that in a major operation it is the duty of the ship's personnel. He did not, he said, observe anyone cleaning up at Tacoma.

■ On the record as a whole the trial court was entitled to find, as it did, that there was a failure to clean the deck after the Tacoma operation. The fact that when the vessel arrived in Seattle the deck was in the unsafe condition described was in itself substantial evidence of that. In the circumstances the court would be warranted in finding against

the ship on grounds either of negligence or of unseaworthiness or of both.[2] Consult the recent and closely related case of Palazzolo v. Pan-Atlantic S.S. Corp., 2 Cir., 211 F.2d 277, affirmed in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. In Palazzolo, which involved injury to a stevedore in the unloading of a vessel, the court said that the shipowner owed not only the duty to provide a seaworthy ship in which the stevedore might work, but it owed him as a business visitor or invitee the duty to provide a reasonably safe place to do his work. "This duty," said the court, "is nondelegable," citing Vanderlinden v. Lorentzen, 2 Cir., 139 F.2d 995, 997. See also in this connection Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Lahde v. Soc. Armadora Del Norte, 9 Cir., 220 F.2d 357.

We need not dwell on the Cookingham doctrine, which, incidentally, appears to have had little notice and no following in this circuit. See Pacific Far East Lines v. Williams, 9 Cir., 234 F.2d 378. Cookingham on its facts furnishes no recognizable analogy to the case before us.

■ As to the matter of damages, we are not prepared to say that the amount awarded was excessive. Appellee was shown to have sustained severe and permanent injuries to his right wrist, to the extent that he has lost and will continue to lose time and wages. It was shown, also, that he suffers much pain and will probably continue to do so for an indefinite period. Furthermore, the evidence shows that he may be obliged ultimately to submit to surgical treatment.

Affirmed.

2. The complaint alleged both unseaworthiness of the vessel and negligence on the part of the appellant. The court found that appellant was negligent.