Jeremiah T. PIERCE, Plaintiff,

v.

ERIE RAILROAD COMPANY, Defendant and Third-Party Plaintiff-Appellee,

William Spencer & Son Corp., Third-Party Defendant-Appellant,

and

John W. McGrath Corp., Third-Party Defendant-Appellee.

No. 143, Docket 25118.

United States Court of Appeals Second Circuit.

Argued Jan. 23, 1959.

Decided March 5, 1959.

John P. Smith, New York City (John Nielsen, New York City, of counsel), for third-party defendant-appellant.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City (J. Roger Carroll, New York City, of counsel), for defendant and third-party plaintiff-appellee.

Macklin, Speer, Hanan & McKernan, New York City (Martin J. McHugh, New York City, of counsel), for third-party defendant-appellee.

Before HAND and WATERMAN, Circuit Judges, and BYERS, District Judge.

BYERS, District Judge.

This appeal calls into question a decision by Judge Conger in the District Court, Southern District, which held the Appellant Spencer to be liable to Erie Railroad Company as indemnitor under a stevedoring contract, during the performance of which the plaintiff Pierce (an employee of McGrath) was injured while at work on the Erie lighter No. 80.

Pierce recovered judgment against the Erie on the theory that the lighter was unseaworthy, in the sum of $10,000. That judgment was paid in full whereby any inquiry into the issues so determined is now precluded. That trial was before a jury.

The pleadings included a third-party complaint against Spencer who was the contracting stevedore with Erie; and separately against McGrath which company had been hired by Spencer to perform the actual stevedoring contracted for by Spencer.

Thus for practical purposes, McGrath was Spencer on April 9, 1954 when Pierce was injured.

Spencer's written contract with Erie contained in paragraph Sixth a carefully drawn provision touching the liability assumed by Spencer, and its undertaking by way of indemnity.[1]

There was no written contract between Spencer and McGrath, and the third-

---

[1] "Sixth: 1. The Contractor assumes all liability for loss or damage to property and injury to or death of persons (including workmen's compensation) of:

party claim of the Erie against the latter, and that of Spencer also against McGrath, rest upon the alleged failure of the latter to live up to an implied warranty to perform the stevedoring tasks in a workmanlike manner.

These respective third-party claims were heard and decided after the Pierce judgment against the Erie had been satisfied.

The judge found and decided against Spencer, pursuant to the terms of the said written contract, and awarded to the Erie $10,000 plus $2,902.34 to cover reasonable counsel fees and expenses in the action.

He dismissed the third-party complaint of the Erie against McGrath, as to which there has been no appeal; he also dismissed the third-party complaint of Spencer against McGrath for failure of proof, which is the second aspect of the matter here under review.

The factual situation giving rise to the litigation may be briefly stated:

On April 9, 1954 the S. S. Milbank lay moored to the north side of Pier B, Jersey City. A floating crane owned by Weeks, not a party, was alongside the ship, and alongside the latter in turn lay the Erie lighter No. 80. The crane lifted logs from the ship and swung them over to the lighter on which they were laden.

Pierce, being in McGrath's employ, was one of a gang of eight stevedores who went aboard the lighter at about

1:00 p. m. and handled the logs as they were swung aboard; about six or seven had been safely handled during the ensuing hour. Between 2:00 and 3:00 p. m. a draft of two logs was lowered so that one end reached the deck of the lighter, and the other end, being five feet or so in the air, was slowly being lowered while Pierce and others in his gang were pushing them into proper resting position. The operator of the crane was in the act of final lowering according to signal when Pierce slipped under these logs which came down upon his left leg and heel, causing his injury. Then it was that an oil or grease spot of about twelve inch diameter was disclosed and to its presence Pierce ascribed his slipping.

The opinion of the court contains the following:

"* * * Plaintiff testified that when he went on board to work the deck was clean as far as he could see. He worked for two hours, back and forth in the area where he fell, and didn't see any oil, nor did anyone call his attention to any oil on the deck. * * *

"Plaintiff and several employees of McGrath, including the foreman, testified. No one had seen any oil or grease on the deck prior to the accident. The case is absolutely barren of any testimony as to what may have caused the oil to be there. There was testimony that no oil

"(a) itself, its officers, agents or employes

"(b) the Railroad, its officers, or agents or employes

"(c) all other persons or corporations, including the property being handled by the Contractor under this agreement and the Railroad's tools, machinery and equipment used by the Contractor for that purpose;

arising from any and all causes in connection with the handling of freight hereunder, and will indemnify the Railroad against any and all expense in connection therewith, except when such loss, damage, injury or death is due solely to the negligence of, or conditions created solely

by the Railroad, its officers, agents or employes.

* * * * *

"3. The Contractor will indemnify and save harmless the Railroad of and from any and all claims, demands, suits, costs, damages, judgments, fines or penalties, and any and all expenses, disbursements or costs incurred, or paid in connection therewith, or in connection with the handling or defense of such matters, arising from, connected with, or imposed or incurred as a result of the Contractor's failure to comply with and fulfill all of the terms, conditions and obligations or assume its full responsibility and liability, under this section or any other section of this Agreement."

was used on the lighter and no employees of McGrath brought any oil on the lighter and that there could have been no oil from the crane. So that there was absolutely no testimony as to how the grease came to be there or how long it had been there.

"Defendant Erie offered no witness in its behalf."

The foregoing is to be treated as a finding, and is so accepted. There is no argument here that it is in any wise contrary to or not in accordance with the evidence.

The legal relationship of these parties is precisely as it was in the District Court.

The Erie lighter No. 80 has been found by a jury to be unseaworthy, i. e., there was indeed a spot of oil having a diameter of about twelve inches on the deck upon which Pierce testified that he fell. No one knows how it came to be there, but the vessel owner has accepted liability, which closes that chapter of this book.

The *decision* here to be made is so straitly confined that it must be apparent that there is no present holding that the presence of an oil spot on the deck of a vessel renders the latter unseaworthy, *ipso facto*. If the issue were here open to review, all attendant circumstances would require careful analysis and consideration. Cf. Poignant v. U. S., 2 Cir., 225 F.2d 595 and Ross v. The Zeeland, 4 Cir., 240 F.2d 820.

The insistent fact that the presence of the oil spot on the deck of the lighter has in no wise been accounted for, renders the present posture of the case difficult to explain in any logical sense. McGrath, which can be thought of as Spencer in these circumstances, has been held to be unanswerable to Spencer although the latter took no real part in the stowage of the lighter; while Spencer has been called upon to indemnify Erie, for a condition on the latter's lighter which was not created by the stevedore.

This result has come about because of the contractual relations of the parties, not through the logical operation of a chain of factual circumstances.

The sagacity is apparent of casting Pierce's case as one for unseaworthiness, rather than negligence. Since knowledge of the presence of the oil spot for any definite time was not brought home to Erie, the latter could not have been held on any theory of negligence, so that the occasion to seek indemnity from Spencer would not then have arisen. To visit that legal responsibility upon the contracting stevedore, in view of the jury's verdict, Erie had *to rely upon its contract with Spencer* quoted above.

The terms of that agreement have been referred to above and the argument for Spencer now to be examined is that its assumption of liability for loss or damage "arising from any and all causes in connection with the handling of freight hereunder * * * *except when such loss * * * is due solely to the negligence of, or conditions created by the Railroad"* (italics supplied) must mean that since Pierce slipped upon an oil spot that was on the lighter, and since that spot is not shown to have been present by reason of the act or omission of Spencer (i. e. McGrath) the only reasonable inference is that it was there when the lighter was brought alongside the crane. Seemingly this is an assertion that Erie was negligent in that respect, and therefore the above-quoted exception should exonerate Spencer.

It is true that Erie offered no testimony at the trial, but it does not follow that it conceded negligence vis-a-vis Spencer, since it was not so charged by Pierce. Had Spencer introduced testimony on the subject as against Erie in the indemnity cause, the District Judge would have been required to make an appropriate finding. In his opinion he says: "No attempt was made by Spencer to prove that the accident was so caused" (i e., through the negligence of Erie).

The third-party pleadings between Erie and Spencer present no issue as to the now asserted negligence of the former, so that the question of the possible burden of proof in that connection is not open to present inquiry.

The argument here is restricted to the assertion that "the only reasonable inference is that the oil or grease was on the deck when No. 80 was placed alongside No. 6 (the crane)."

Whether that inference is supportable or not, is entirely a matter of conjecture, since concededly there is no evidence whatever to account for the presence of the offending substance. This is a way of saying that there is nothing in the record to suggest that so much of the decision below as deals with this subject, is clearly erroneous. The argument therefore is rejected.

The remaining inquiry is addressed to the claim of Spencer for indemnity against McGrath. That claim is based upon the assertion that the latter rested under the duty to perform its stevedoring services in a workmanlike manner. So much is deemed to have been authoritatively stated in Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.

The difficulty here is that there is no evidence that McGrath failed to perform that duty which was implicit in its contractual relations with Spencer.

The opinion below states the matter thus:

"In order to find McGrath liable, I would have to find that the spot of grease on the deck was there by reason of some fault on the part of McGrath. I cannot find any such thing in the evidence, and no one has proved any such thing although the burden of proof was on Erie and Spencer so to show."

The foregoing constitutes a finding, and the attention of this court has not been directed to anything in the record to impair its accuracy.

It is a pity that this oil spot should not have been as forthright touching its advent, as it was fortuitous concerning its appearance.

While the end result of the litigation seems to be lacking in symmetry, as stated above, nothing has been shown to discredit the decision appealed from; therefore it is affirmed.