Benjamin BLIER, Plaintiff-Appellant,

v.

UNITED STATES LINES COMPANY, Defendant-Appellee.

No. 187, Docket 26357.

United States Court of Appeals Second Circuit.

Argued Jan. 19, 1961.

Decided Feb. 17, 1961.

Kenneth Heller, New York City, for plaintiff-appellant.

William R. Mackey, New York City (Louis J. Gusmano, and Kirlin, Campbell & Keating, New York City, on the brief), for defendant-appellee.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

MEDINA, Circuit Judge.

Benjamin Blier was employed as a seaman purser on the vessel SS American Leader, owned by defendant United States Lines Company, and he was injured on May 31, 1957 as he was boarding the vessel on his return from shore leave. The American Leader, having arrived from a foreign port, was at anchor in the Port of New York, at the Stapleton anchorage. Blier's version of the accident was that the third section of a three-piece gangway, rigged into place by a shore gang employed by defendant, provided a series of five wooden steps leading from the top of the bulwarks of the vessel to the main deck, and that as he came down these steps he slipped "on a large smear of grease on the second or third steps and skidded down the gangway twisting his right ankle." The claim for recovery was based on the familiar double aspect of unseaworthiness under the general maritime law and negligence under the Jones Act, 46 U.S.C.A. § 688. The proofs adduced by the shipowner tended to establish that there was no grease on the steps and that the shipowner had no notice of the presence of any grease on the steps. The case was submitted to the jury, in a charge to which plaintiff's counsel took no exceptions and with respect to which he expressed satisfaction, except that he expressed the thought that it might be helpful to the jury if the trial judge saw fit to give the jury some examples of unseaworthiness. No exception or objection was noted when the trial judge refused to do this, and the jury rendered a general verdict for defendant. Plaintiff appeals.

■ We are urged to reverse on the ground that Judge Dimock is said to have instructed the jury that "a vessel does not become unseaworthy because of a temporary condition of unseaworthiness"; that his instructions were such as to require a finding for defendant on the unseaworthiness count, unless the jury found defendant had notice of the existence of such a "temporary unseaworthy condition"; that the rule thus alleged to

have been applied by Judge Dimock had been "closely adhered to by this circuit right down to and including the case of Poignant v. United States, 1955, 225 F.2d 595," and the dictum of Judge Byers in Pierce v. Erie R. Co. et al., 2 Cir., 1959, 264 F.2d 136, at page 139; and that this rule had been overturned and repudiated as bad law by the Supreme Court in its recent decision in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, decided on May 16, 1960, just twelve days after the rendition of the verdict in this case. If these assertions were correct we might well have given serious consideration to appellant's contention that the trial judge had committed "fundamental error." In such a case we clearly have power to decide on the whole trial record whether the likelihood of a miscarriage of justice is such as to warrant a review of the "error," even in the absence of objection or exception at the trial. See Hormel v. Helvering, 1941, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037; Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 2 Cir., 1956, 234 F.2d 253; Thorp v. American Aviation and General Ins. Co., 3 Cir., 1954, 212 F.2d 821, 824–825; Massachusetts Bonding & Ins. Co. v. Ray Dilschneider, Inc., 8 Cir., 1953, 203 F.2d 556, 560; Smith v. Welch, 10 Cir., 1951, 189 F.2d 832, 836–837; Dowell, Inc. v. Jowers, 5 Cir., 1948, 166 F.2d 214, 2 A.L.R.2d 442; Shokuwan Shimabukuro v. Higeyoshi Nagayama, 1944, 78 U.S. App.D.C. 271, 140 F.2d 13; 5 Moore, Federal Practice, Para. 5104, at 2503–04.

We find, however, that Judge Dimock's instructions to the jury were wholly unexceptionable, that they are in strict conformity with the teaching of Mitchell and that appellant has misunderstood the course of decision in this Circuit concerning the doctrine of seaworthiness as applied to temporary conditions arising after the commencement of the voyage. We shall, accordingly, briefly comment on the point decided in Mitchell, on the effect of this decision on rulings made by us in Poignant and other cases, and on the instructions actually given by Judge Dimock.

The development in this Circuit of principles of law governing the liability of a shipowner for unseaworthiness, caused by a temporary or transitory condition that arose after the commencement of the voyage, is illustrated and illuminated by the fine opinion of our brother, the then Judge Harlan, in Dixon v. United States, 2 Cir., 1955, 219 F.2d 10. Two lines of decisions developed in the course of time relating to slippery conditions on stairways, passageways and other places on shipboard caused by grease, vegetable matter or other similar substances. A common feature of these cases and the one now before us is, there are numerous ways in which the slippery substance might have been placed where it was and very little the shipowner could do about it unless he had some notice of the existence of the condition. The Third Circuit held there was no liability for unseaworthiness caused by such a temporary condition, in the absence of some proof that the shipowner knew of the condition, and had an opportunity to remedy it. Cookingham v. United States, 3 Cir., 1950, 184 F.2d 213. In that case a ship's cook had slipped on some Jello on a stairway. In Poignant, where a stewardess slipped on a piece of apple peel in a passageway leading to the dining room, we held the question of seaworthiness was one of fact to be decided by the trier of the facts, even in the absence of proof that the shipowner had notice of the condition and an opportunity to remedy it, and the Ninth Circuit took the same position in Johnson Line v. Maloney, 1957, 243 F.2d 293. Finally, the view that there could be liability for a temporary condition of unseaworthiness, in the absence of any fault on the part of the shipowner, was "impressively challenged by Chief Judge Magruder's opinion," [1] writing for the First Circuit in Mitchell, 1959, 265 F.2d 426. There a member of the crew of a

---

1. See dissent of Mr. Justice Frankfurter in Mitchell, 362 U.S. at page 550, 80 S.Ct. at page 933.

fishing trawler slipped on some slime and fish gurry on the rail of the trawler as he was going ashore. The slime and fish gurry had remained on the rail after the earlier unloading of the catch. The record in Mitchell presented in the clearest possible way the question of whether the shipowner could be held liable for damages caused by a temporary condition of unseaworthiness, in the absence of any fault on his part, as the trial judge specifically instructed the jury that they could not find for the plaintiff on the unseaworthiness count unless they also found as a fact "that the slime and gurry had been on the ship's rail for a period of time long enough for the respondent (shipowner) to have learned about it and to have removed it." Exception was taken to this instruction and it was the basis for the reversal by the Supreme Court. Thus the shipowner's liability for unseaworthiness was held not to be limited by concepts of common law negligence. As the Supreme Court has spoken, we need not concern ourselves with the origin or the development of the doctrine of transitory unseaworthiness up to this point. Obviously, the doctrine has grown and prospered since we decided Dixon in 1955. But what of the future? It is not likely the last word has yet been written on the subject of the liability of the shipowner for a temporary condition of unseaworthiness.

■ Appellant seems to think that all the seaman must establish to warrant a recovery in this case is that there was grease on the gangway and that he slipped on that grease and was injured. In effect he says: grease is slippery, and, if grease was on the gangway and appellant slipped on it, he is *ipso facto* entitled to recover, as the vessel must have been unseaworthy. But the teaching of Mitchell is merely that there must be and is a "complete divorcement of unseaworthiness liability from concepts of negligence," and that the duty of the shipowner is not "to furnish an accident-free ship," but "only to furnish a vessel and appurtenances reasonably fit for

their intended use," and the case was remanded for a new trial on the issue of unseaworthiness on this basis.

■ Where does Poignant fit into this framework? In Mitchell Mr. Justice Harlan, in his separate dissenting opinion, calls attention to the fact that in Poignant, the vessel lacked garbage chutes and the garbage was pulled, in cans, through the passageway where Poignant fell, to a railing, where it was jettisoned. He adds (362 U.S. at pages 570–571, 80 S.Ct. at page 943):

"The Court of Appeals first expressed the view that any unseaworthy condition which existed had in all probability arisen after the voyage had commenced. It said, much as the Court now holds, that Alaska Steamship Co. v. Petterson, 347 U.S. 396 [74 S.Ct. 601, 98 L.Ed. 798], required it to apply a rule of absolute liability nonetheless. It then put, as the critical issue, the question whether the presence of some garbage in a public passageway constituted an unseaworthy condition, and, finding the matter to turn on an issue of fact, remanded the case for trial. However, it is important to note the manner in which the court dealt with the problem. Although at the outset of the opinion the allegedly unseaworthy condition was assumed to be the presence of garbage in a passageway, 225 F.2d at page 597, the remand was *in fact* directed to the question whether the absence of garbage chutes rendered the vessel not reasonably fit for the voyage, and therefore unseaworthy. Id., at 598. This, of course, would be a condition going to the proper outfitting of the vessel for sea travel, and a clear case of initial unseaworthiness. In such event, the injury would have been the proximate result of that unseaworthiness, for it was by reason of the lack of chutes that garbage was carried through the passage-

ways at all." (Emphasis that of Mr. Justice Harlan.)

The statement in Poignant on the subject of the remand, and the new trial, is (225 F.2d at pages 598–599):

"Since the dismissal of the claim based on alleged unseaworthiness was not required by the bare facts stated in the findings below, it becomes necessary to consider whether there was sufficient evidence on this issue to raise questions of fact which only the trial judge can resolve. As to this, there was some testimony tending to support possible inferences (1) that the absence of garbage chutes on the vessel was the proximate cause of the accident and (2) that comparable vessels generally are provided with such chutes. Especially since this testimony involves questions of credibility, its weight and any inferences which it may, or may not, require are matters for determination by the trial judge.

"Reversed and remanded for retrial on the issue of unseaworthiness."

The concurring opinion of Judge Frank would seem to indicate that he understood the holding of the Court to be in more general terms, and not limited to the question of unseaworthiness based upon the absence of garbage chutes and proof that other similar vessels were equipped with garbage chutes. But we cannot be sure of this, and the subject is not relevant in any event, in view of the holding of the Supreme Court in Mitchell. We would then conclude that, in order to follow Mitchell, in the absence of the submission of some specific request for instructions based upon the proofs adduced by the parties in a particular case, a trial judge should instruct the jury that, where the claim is based upon an alleged temporary condition of unseaworthiness, they can find for the plaintiff on the issue of unseaworthiness only if they find that the temporary condition in fact existed, that it was the proximate cause of plaintiff's injuries, and that the shipowner had not furnished and maintained a vessel and appurtenances reasonably fit for their intended use. And this is precisely what Judge Dimock did. His complete instructions on the subjects of unseaworthiness and negligence follow:

"First I will try to explain to you the term 'unseaworthiness'. The owner of a vessel has an absolute duty to provide a seaworthy vessel. This means that the defendant was obligated to furnish and maintain safe working conditions. Seaworthiness is reasonable fitness for the particular voyage, or directed to the present case, reasonable fitness for the particular uses which the plaintiff was making of the ship at the time of his alleged injury.

"In considering whether the vessel was unseaworthy due to the presence of grease on the steps of the gangway, the following rules should be followed:

"A vessel is not unseaworthy by reason of a temporary condition, if even so the vessel was reasonably safe and suitable. In order to be seaworthy, a vessel need not meet a standard of perfection. It need only be reasonably safe for the purpose to which it is to be put.

"If you do decide that the vessel was unseaworthy, then its liability is an absolute one. That is, it does not depend upon any showing that the defendant or its employees knew or had reason to expect that grease was on the steps of the gangway, or that the defendant knew that the steps would be used when such grease was on there. You will remember that the plaintiff also claims recovery on the ground that the defendant was negligent in that its employees failed to remove grease from the steps on which he was allegedly injured.

"I shall try to explain to you what the term 'negligence' means.

"In its relation to the plaintiff the defendant had a duty to exercise through its employees ordinary care. Ordinary care is that which would be the conduct of a reasonable and prudent person under similar circumstances. It is a breach of that duty of ordinary care if defendant's employees conducted themselves either through action or failure to act in such a manner as to create a risk of injury to the plaintiff which a reasonable and prudent person would have anticipated and guarded against under similar circumstances.

"If you find that acts of employees of the defendant, or failure to act, created a risk of harm to the plaintiff which reasonable persons similarly situated would have anticipated and guarded against, that would mean that you find the defendant negligent.

"In this connection you must decide whether any grease which was on the steps had been there long enough so that reasonable persons would have discovered it and removed it.

"You are not to guess or to speculate as to whether the ship was unseaworthy or the defendant was negligent, nor can you regard the mere fact of the accident as a basis for finding the defendant responsible. Your determination must be based upon facts or reasonable inferences from facts.

"It is important for you to bear in mind that a finding of unseaworthiness of the vessel or negligence of the defendant without more is not enough to hold the defendant liable in damages.

"Its liability also depends on whether the unseaworthiness or negligence was a proximate cause of injury. To be a proximate cause there must be a direct causal connection between the unseaworthiness or negligence and the injury. In other words, there must be an unbroken chain of events flowing from the unseaworthiness or negligence and leading to the injury. Assuming that you found the vessel unseaworthy or the defendant negligent, you must then decide whether there was this causal connection between the unseaworthiness or negligence and injury to the plaintiff."

Nor do we find any inconsistency between the instructions thus given by Judge Dimock and the dictum in Pierce, supra. In that case the court was dealing with a third party claim that had been reserved for decision after the conclusion of the trial of the issue of unseaworthiness between a longshoreman, who was injured when he slipped on an oil or grease spot, and the owner of the lighter on which the longshoreman slipped. In the posture of the case in this Court there was no occasion to review the finding of unseaworthiness for reasons stated in the opinion. The dictum relied upon by appellant is as follows (264 F.2d at page 139):

"The decision here to be made is so straitly confined that it must be apparent that there is no present holding that the presence of an oil spot on the deck of a vessel renders the latter unseaworthy, *ipso facto*. If the issue were here open to review, all attendant circumstances would require careful analysis and consideration. Cf. Poignant v. U. S., 2 Cir., 225 F.2d 595 and Ross v. The Zeeland, 4 Cir., 240 F.2d 820."

This appears to us to do no more than state what is implicit in the holding of the Supreme Court in Mitchell. True it is that the Supreme Court in Mitchell held the duty with respect to seaworthy conditions is no "less with respect to an unseaworthy condition which may be only temporary." 362 U.S. at page 549, 80 S.Ct. at page 932. But the mere use of the word "temporary" in Judge Dimock's instructions cannot fairly be construed to mean that the rule applicable to a permanent condition is a different one. The plain fact is that the case did involve a temporary condition and not a permanent

one, and it was natural and proper to instruct the jury on the subject of the shipowner's duty as applicable to the case in hand. The reason for the reversal in Grzybowski v. Arrow Barge Co., 4 Cir., 1960, 283 F.2d 481, 486, was that the trial judge made certain remarks to the jury which failed to measure up to the requirement that unseaworthiness liability be completely divorced "from concepts of negligence."

Thus we hold the instructions as given to the jury by Judge Dimock were in all respects correct. How the jury, if it found there was a smear of grease on one of the steps of the gangway, was to or did determine the question of seaworthiness is matter of speculation, just as we are never sure how the jury decides the issue of what the theoretical reasonable man would or should do or refrain from doing in a given set of circumstances.

Affirmed.