Stefanos **KTISTAKIS**, Plaintiff,

v.

**UNITED CROSS NAVIGATION CORP. and Carras (U.S.A.), Ltd.,** Defendants.

United States District Court
S. D. New York.
April 13, 1962.

Harry Edelstein, Haverstraw, N. Y., for plaintiff.

Zock, Petrie, Sheneman & Reid, New York City, for defendants, Edwin K. Reid, New York City, of counsel.

294

BONSAL, District Judge.

The plaintiff was the second mate aboard the S. S. GENIE, a vessel owned by the defendant United Cross Navigation Corporation. On November 14th and 15th, 1957, the GENIE was discharging oil at Port Socony, Staten Island, New York. Shore discharge lines were connected to the ship's manifold discharge lines by means of two metal flanges which were bolted together with a gasket inserted between them. Under this coupling, and on the deck of the ship, were placed large tubs as a precautionary measure to collect any oil which might drip from the connection.

The plaintiff, as second mate, stood his watch from midnight until 4 A.M. on November 15th and was the officer in charge at that time. Plaintiff alleges that at about 2:30 A.M. he was walking aft and as he passed under the discharge lines, slipped on an accumulation of oil covered by sawdust, and fell, landing on his lower back. The lines were approximately four to five feet above the deck. At the time the accident occurred there was evidence that the ship was down at the stern by reason of the discharge from the forward tanks.

Plaintiff has undergone two operations and a third is recommended. In his present condition he is totally unfit for sea duty.

Four questions present themselves: (1) Did the accident occur as the plaintiff alleges? (2) Was this accident due to the unseaworthiness of defendant's vessel? (3) If the answers to these two questions are in the affirmative, then was the accident the proximate cause of the plaintiff's injuries? (4) Was the plaintiff contributorily negligent, and, if so, to what extent?

There is a sharp conflict in the testimony as to whether the accident ever happened. Markos Makrinos, a shipmate of the plaintiff, who was on watch with him, stated in a deposition taken in April 1961 that he only saw the plaintiff slip, but did not see him fall. In an attempt to impeach this testimony, a written statement of Makrinos, purportedly made before a Notary in Greece in August 1958, was offered. In this statement Makrinos is said to have told substantially the same story as the plaintiff.

Plaintiff testified that shortly after the accident the ship's cook massaged his back to relieve the pain, and wrapped him in a towel.

No entry was made in the ship's log concerning the accident either by the plaintiff as second mate or by anyone else. The plaintiff says it was not proper for him to make such an entry but that he did report it to the Captain. A witness for the plaintiff, who has been going to sea since 1929 and has a master's license, stated that a mate never puts an entry into the log concerning his own injury. There was no testimony from the Captain, but the Chief Officer of the GENIE, Kostas Diakogianis, who is still in the employ of the defendant, states in his deposition that he, as Chief Officer, received no report and made no entry.

Various other conflicts in the evidence developed during the course of the trial including whether the plaintiff saw the oil and sawdust before he slipped. Even if the plaintiff did, it would not relieve the defendant of liability for unseaworthiness of its vessel. It would, however, make the plaintiff contributorily negligent and thereby reduce the amount of his recovery.

Many of the inconsistencies in the evidence may be explained by the plaintiff's lack of knowledge of English. This necessitated the use of different Greek interpreters at the depositions prior to trial and at the trial. Also, a number of the witnesses are still in the employ of the defendant. After consideration of all the evidence I find that the plaintiff did suffer an accident aboard the GENIE on November 15, 1957, and that the accident was caused by a mixture of sawdust and oil on the deck of the GENIE.

This brings us to the second question, which is whether the accident

was caused by the unseaworthiness of the vessel. Plaintiff's expert witness, Capt. John Robertson, testified that it is common practice to spread sawdust over an oil spill as an absorbent. However, once this is done, it is good seamanship to remove the saturated sawdust from the deck as soon as possible as it represents a double hazard—the danger of fire or of someone slipping.

The presence of this oil covered with sawdust created a condition aboard the GENIE which was not normal under a standard of reasonable fitness. Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955). Colon v. Trinidad Corp., 188 F.Supp. 97 (S.D.N.Y.1960). A seaman "is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery". Colon, supra, at p. 100.

Since Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) it has been clear that a condition of transitory unseaworthiness has been sufficient grounds for recovery. The recent cases in this Circuit of Blier v. United States Lines Co., 286 F.2d 920 (2d Cir. 1961) and Pinto v. States Marine Corp., 296 F.2d 1 (2d Cir. 1961) have aided in defining the limits of this concept. In Pinto the Court held that the trial judge's charge on transitory unseaworthiness correctly stated the law. The trial judge had charged that, "mere momentary presence of oil in the area" in which the seaman fell "does not in and of itself render the vessel unseaworthy". 296 F.2d at p. 3.

However, if we accept the plaintiff's testimony that no oil was spilled and sawdust spread over it during his watch, it is clear that at 2:30 A.M. when the plaintiff slipped and fell, the unseaworthy condition was not one of a "mere momentary" nature. If there was oil on the deck covered with sawdust at 2:30 A.M., and no oil was spilled or sawdust spread from midnight on, it is reasonable to believe that the condition existed prior to midnight.

The plaintiff advanced alternate theories to explain the presence of the oil. It was there either because someone had been careless in emptying one of the tubs or the tubs had been allowed to overflow. Defendant produced substantial evidence to show that the coupling between the ship and shore discharge lines was sound and not leaking. However, the presence of the oil on the deck covered by the sawdust was an unseaworthy condition, regardless of how the oil came to be where it was.

The plaintiff, as second mate and the officer in charge of the watch, had a duty to clean the oil spill and sawdust from the deck. He claims that he had no knowledge that the condition existed. However, as the officer in charge, it was his duty to discover such things and remedy them.

Under the theory of Walker v. Lykes Bros. S. S. Co., 193 F.2d 772 (2d Cir. 1952) an injured person would be denied recovery in situations in which the violation of a duty which he consciously assumed as a term of his employment contributed to his accident. According to this theory, as the plaintiff's duty as officer in charge was to eliminate the very condition which caused his injury, he should therefore be barred from any recovery. This theory has been criticized, 65 Harvard Law Review 1238 (1952) and 62 Yale Law Review 111 (1952). Several courts have declined to follow it. Judge Magruder, in Boat Dagny v. Todd, 224 F.2d 208, 210 (1st Cir. 1955), said:

"It is true that the plaintiff in the due performance of his supervisory responsibilities as master might perhaps have been able to see to it that the engineer got the electric power restored. But if so, his failure to do this was but a species of contributory fault on the plaintiff's part which would go only in diminution of damages instead of being a complete bar to the action. * * * "

And in Donovan v. Esso Shipping Co., 259 F.2d 65 (3rd Cir. 1958) the court

pointed out that a recovery for unseaworthiness is mitigated to the extent of the seaman's own negligence. If the injury is caused exclusively by the seaman's negligence, only then can there be no recovery. In the case at hand the plaintiff may very well have been derelict in not discovering and remedying the unseaworthy condition. However, this does not bar him completely.

Finally, in Dunbar v. Henry Du Bois' Sons Co., 275 F.2d 304 (2d Cir. 1960), the court expressly declined to follow the Walker decision. In Dunbar the plaintiff's decedent was the sole member of the crew of a steam derrick which capsized. The defendant argued that the deceased, as the only one aboard, was in complete charge and his failure to man the pumps caused the accident, citing Walker in support. The Court affirmed the jury finding that Dunbar was only 20 per cent negligent.

Having determined that plaintiff had an accident caused in whole or part by the unseaworthiness of the vessel, we now pass to the question of the causal relation between this accident and the plaintiff's injuries. Once again there is a sharp conflict. There was evidence to the effect that the plaintiff's injuries could have been caused by a congenital defect in his lower back. After the accident in November 1957, plaintiff continued to perform his regular duties as second mate until April 1958 when he was discharged as sick. On several occasions prior to the accident plaintiff had complained of pains in his back. In April 1957 he was examined by a doctor in Bremen; and in July 1957 by doctors in Baltimore. Both examinations resulted in a diagnosis of rheumatism of the joints. There was medical testimony, however, that because of plaintiff's congenital defect, either a fall or a slip could cause the plaintiff's present condition. Consequently, upon weighing the expert medical testimony, I find that the injuries to the plaintiff were

causally related to the accident he sustained aboard the GENIE.

The injuries to the plaintiff's lower back are severe. Two operations involving spinal fusions have already been performed and a third is contemplated. As a result of an excessive loss of blood during the first operation on plaintiff's back, he has sustained a partial loss of hearing.

The net effect of these injuries is to render this 52 year old plaintiff totally unfit for duty as a seaman, his occupation since he was 15 years old.

In summary, I find that the plaintiff had an accident aboard the defendant's ship, which was caused by the unseaworthiness of the vessel. The plaintiff's present condition is causally related to the injuries sustained by reason of this accident. I also find that the plaintiff was contributorily negligent as the officer in charge of the watch for his failure to remedy a hazardous situation which it was his duty to discover and correct. Plaintiff's contributory negligence was 50 per cent responsible for his accident.

Having carefully considered the permanent nature of the injuries sustained by the plaintiff, the pain and suffering he has endured and will continue to endure, and the effect of his own contributory negligence, the Court finds that the plaintiff is entitled to recover of the defendant the sum of $40,000. in damages.

There was medical testimony to the effect that a third fushion operation on the plaintiff's back may be successful. Therefore, if the plaintiff should decide to undergo this operation, I find that the reasonable medical expenses, including hospitalization and doctors is $1,500.

If the plaintiff should be an out-patient at any time during the one year immediately following the operation, he shall be entitled to maintenance at the rate of $8.00 a day.

The foregoing constitutes the Court's findings of fact and conclusions of law.

Settle order on notice.