John WILLIAMS, Plaintiff,

v.

LEHIGH VALLEY RAILROAD COMPANY, Defendant, Third-Party Plaintiff,

Wm. Spencer & Son Corporation, Third-Party Defendant.

United States District Court S. D. New York.
June 4, 1957.

See also, D.C., 19 F.R.D. 285.

Satterlee, Browne & Cherbonnier, New York City, for plaintiff, John Gleason, New York City, of counsel.

Pyne, Brush, Smith & Michelsen, New York City, for Lehigh Valley, R. R. Co., M. J. Cahn and Vincent J. Ryan, New York City, of counsel.

John P. Smith, New York City, for third-party defendant, John F. Stephens, New York City, of counsel.

WEINFELD, District Judge.

The third party plaintiff, Lehigh Valley Railroad Company, and the third party defendant, William Spencer & Sons, entered into an agreement whereby the latter was to act as stevedore in unloading and loading of freight to and from freight cars and barges owned by Lehigh at its terminal pier in Jersey City.

On April 25, 1955 John Williams, an employee of Spencer, was working on an open, flat-top barge onto which steel beams were being loaded from freight cars by means of a crane operated by a Lehigh employee. All other workmen engaged in the loading operation were those of Spencer. The barge was moored to a pier adjacent to the railroad yard where the steel beams were contained in freight cars located about two hundred fifty feet from the barge. As a draft of steel was made up it was hoisted from the freight cars by the boom of the crane and then swung around and lowered to the barge where Williams and Anderson, a fellow employee, positioned and piled the beams on the open deck of the barge. Williams worked on the outboard side and Anderson on the inboard side.

Williams and Anderson started their day's work at 4 o'clock. At that time dunnage, consisting of 4 x 4s about 14 to 18 feet in length, was piled up alongside a cabin on the barge. Williams and Anderson testified that some of the dunnage was cracked, split or broken.

The method of operation was as follows: before the first draft of steel beams was lowered they placed two runs of dunnage about 12 feet apart from bow to stern in parallel positions; then as the draft was received they placed the steel beams athwarts on top of the dunnage gradually working from the stern toward the bow; then dunnage was placed on top of the first tier of the beams and the drafts of second tier beams were put in position; and then dunnage was placed on top of the second tier to receive the third and final tier.

The men worked until almost 11 p. m. and just when the last draft had been lowered and either Williams or Ander- son had given the signal to the operator in the crane to lift up the slack and lower the draft a cracking sound was heard at the outboard side towards the bow of the barge where Williams was then working and the pile of beams in that area crashed on his foot severely injuring him. The evidence supports a finding that unfit dunnage gave way under the weight of the beams causing them to crack.

Williams brought this action against Lehigh to recover damages charging in substance (1) unseaworthiness; and (2) negligence.

Williams' case against Lehigh was tried to a jury but before its conclusion was settled for $11,500.[1] The instant third party suit by Lehigh against Spencer to recover that payment, as well as the reasonable and necessary expenses of trial, was continued and tried to the Court without a jury.[2]

Lehigh in its third party claim relies upon its contract with Spencer, which amongst others, contains the following provision:

"The Contractor [Spencer] assumes all liability for loss, damage or injury (including workmen's compensation) to the person or property of:

(a) itself, its officers, agents or employees * * * arising from any and all causes in connection with the handling of freight hereunder except from the sole negligence of, or conditions created solely by the Railroad, its officers, agents or employees."

Spencer concedes that under this clause if any negligence on its part contributed to the accident, then even though Lehigh was also negligent, it, Spencer, is required to indemnify Lehigh. In other words, Spencer is exon-

1. The settlement of the Williams suit against Lehigh was without prejudice to the respective rights of Lehigh and Spencer as between themselves except that it was agreed the amount of the settlement was reasonable and that the contract provision against settlement without Spencer's knowledge and consent be waived.

2. The parties also stipulated at the commencement of trial that Lehigh's third party action against Spencer should proceed before the Court without a jury and that the evidence received in the Williams case should be part of the record of such trial.

erated from liability only if the Williams injuries were due to the "sole negligence" of, or the result of "conditions created solely" by Lehigh.

■ Spencer, as Williams' employer, was under a duty to exercise reasonable care to provide him with a reasonably safe place in which to work.[3] Correlatively Lehigh, since Williams was its invitee, was under a similar duty.[4] Thus there was a concurrent duty on the part of each to exercise reasonable care to provide Williams with a reasonably safe place in which to work,[5] and "neither could devolve its duty to him upon the other, however much they might agree upon its final incidence as between themselves * * *."[6]

Williams' suit against Lehigh, as already noted, was grounded upon two theories: (1) unseaworthiness of the barge, in that the dunnage was inadequate and unfit for use; and (2) negligence in the failure adequately to light the area where he was working.

■ The evidence establishes and the Court finds that there were no lights on the barge proper; that the illumination for it was supplied by three lights upon the cab of the crane located some 50 feet above the barge, and also from a light on top of a warehouse about 60 feet above the level of the dock and about 250 feet easterly from the nearest point of the barge; that the crane lights were not always directed to or upon the barge because they rotated as the cab of the crane moved, and at the times when they reflected upon the freight cars from which the drafts of steel were hoisted, they furnished no illumination on any area of the barge.

While the crane lights, when they shone directly on a specific area of the barge, may have been adequate, they and the warehouse light failed to cast sufficient illumination onto the outboard area during the entire time that Williams worked there. As the steel beams were piled up in tiers, the effective rays of the crane lights were obstructed so that (while sufficient to furnish illumination for his partner on the inboard side) they did not penetrate the area where Williams was working at the time of the accident—at the outboard and toward the bow end—in other words, the two tiers of beams which were piled up on the inshore side obscured the stream of light coming from the crane and neither did the warehouse light furnish adequate illumination to the area where Williams was then working.

While there is some conflict on this issue, the evidence warrants a further finding that in the darkness of the night the light was not cast upon the area outside the cabin where the dunnage was piled so that when Williams needed additional dunnage as the loading progressed, he could not clearly see those that were broken or split.

Lehigh did not furnish any additional lights, although supplementary illumination through portable lights or otherwise could readily have been made available. Thus in failing to furnish adequate lights, and omitting to furnish additional lights, it was negligent.

■ Spencer, which was engaged in the actual task of unloading, was also negligent in failing to comply with its duty to provide a reasonably safe work area for its men. Williams was engaged in that job from 4 p. m. to almost 11 p. m. when the accident occurred, almost at the point of completion of the job, with the receipt of the last draft. Although it had a supervisory employee on the job, neither he nor anybody on behalf of Spencer appears to have paid any attention to the working conditions during the progress of the unloading.

3. Porello v. United States, 2 Cir., 153 F.2d 605, 608, modified on other grounds 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011.

4. Anderson v. Lorentzen, 2 Cir., 160 F.2d 173; Miller v. The Sultana, 2 Cir., 176 F.2d 203.

5. McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 324, 107 N.E.2d 463.

6. Vanderlinden v. Lorentzen, 2 Cir., 139 F.2d 995, 997; see also, Muratore v. United States, D.C.S.D.N.Y., 100 F.Supp. 276.

In fact, from the time Williams and his partner commenced work until the accident they were the only Spencer employees about the barge. In the hours after darkness fell Spencer could readily have observed and corrected the inadequate illumination condition; its failure to do so was not the exercise of reasonable care and constituted negligence. In this connection it is noted that under the contract Spencer was obligated to provide "* * * sufficient and competent labor, checking and supervising forces". Adequate light would have made the broken dunnage observable either when first picked up from the pile or, as the work progressed, after it had been placed in position to receive the drafts of steel beams, and thus enabled Williams to avoid its use. The negligent conduct can reasonably be said to have been the proximate cause of Williams' injuries.[7]

But separate and apart from the foregoing, the evidence also warrants a finding that the dunnage used was made available to Williams by Spencer, his employer, and that it was not supplied by Lehigh. It was Spencer's duty to carry on the stevedoring work for which it had been specially engaged under the contract and it was required to supply all equipment for that purpose. The contract between Lehigh and Spencer was on a cost-plus basis. Items which were to be billed by Spencer and paid for by Lehigh included the cost of materials, supplies, tools, skids and planks. While Spencer denies skids and planks were intended to include dunnage, the evidence is to the contrary and the prevailing practice between the parties does not permit any different conclusion. Spencer, in loading the beams, availed itself of dunnage which had been used on prior occasions either in the freight yards or on the barge itself. In permitting

its men to use this dunnage, some of which was split, cracked and broken, it was negligent insofar as its duty to Williams was concerned, and this negligence created an unseaworthy condition of the barge which in turn made Lehigh, as owner of the barge, responsible to Williams by reason thereof.[8]

Thus upon the entire record, it is beyond question that Williams' injuries were not due to the "sole negligence" of Lehigh and under the contract Lehigh is entitled to recover[9] the $11,500 paid to Williams, plus $4,000 representing the reasonable counsel fees and the sum of $594.20, necessary disbursements in defense of the action, a total of $16,094.-20.[10]

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law. Should either party desire separately numbered Findings of Fact and Conclusions of Law, these may be proposed within five days upon notice to the other side.

---

7. Cf. Brabazon v. Belships Co., 3 Cir., 202 F.2d 904.

8. Cf. Petterson v. Alaska S.S. Co., 9 Cir., 205 F.2d 478, affirmed 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Tarkington v. U.S. Lines Co., 2 Cir., 222 F.2d 358.

9. Cf. Ryan Stevedoring Co., Inc., v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S. Ct. 232, 100 L.Ed. 133.

10. There were two trials; the first trial resulted in a disagreement.